# Cawley *v.* Baltimore & Ohio Railroad Company, Appellant.

*Negligence—Railroads—Death—Crossing tracks—Evidence.*

1. Where a man is found dead on the tracks of a railroad thirty feet from a public crossing shortly after an express train had passed, and no witness saw the accident, and no traces of blood were found at the crossing, and there is no evidence whatever that the deceased was struck while on the crossing, it is reversible error to permit a jury to draw the inference that the deceased was on the crossing when he was struck, and that the railroad company was guilty of negligence.

2. Where every fact proved will support an inference that excludes liability just as strongly as a contrary one, a jury is stepping into the field of speculation and conjecture when they undertake to say that the theory upon which negligence rests is the one that truly accounts for what actually happened.

Argued April 28, 1910. Appeal, No. 159, April T., 1910, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth T., 1907, No. 689, on verdict for plaintiff in case of Mary A. Cawley v. Baltimore & Ohio Railroad Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before Carnahan, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $550. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Owen S. Cecil*, with him *Johns McCleave*, for appellant.—There was no evidence from which jury might infer that deceased was struck while on the highway: Quigley v. Canal Co., 142 Pa. 388; Jones v. R. R. Co., 202 Pa. 81; Welsh v. R. R. Co., 181 Pa. 461; Penna. R. R. Co. v. Mooney, 126 Pa. 244; Ogden v. R. R. Co., 23 W. N. C. 191.

The undisputed evidence as to the situation at the crossing negatives the presumption that the deceased performed his duty to stop, look and listen: Davis v. Ry. Co., 159 Fed. Repr. 10; Carroll v. R. R. Co., 12 W. N. C. 348; Marland v. R. R. Co., 123 Pa. 487; Meyers v. R. R. Co., 150 Pa. 386; Urias v. Penna. R. R. Co., 152 Pa. 326; Connerton v. Delaware & H. Canal, 169 Pa. 339; Seamans v. D. L. & W. R. R. Co., 174 Pa. 421; Coppuck v. P. W. & B. R. R. Co., 191 Pa. 172.

*A. H. Mercer*, with him *L. W. Bigham*, for appellee.— The finding of the jury upon the facts in this case is supported by the decisions of all of our courts: Penna. R. R. Co. v. Weber, 76 Pa. 157; Weiss v. R. R. Co., 79 Pa. 387; Sontum v. Ry. Co., 226 Pa. 230; Laib v. Penna. R. R. Co., 180 Pa. 503; Davis v. R. R. Co., 34 Pa. Superior Ct. 388; Unger v. R. R. Co., 217 Pa. 106; Longenecker v. R. R. Co., 105 Pa. 328; Bard v. R. R. Co., 199 Pa. 94; Seifred v. R. R. Co., 206 Pa. 399; Kuntz v. R. R. Co., 206 Pa. 162.

OPINION BY HEAD, J., October 10, 1910:

In that section of the city of Pittsburg in the immediate vicinity of Hazelwood station, the right of way and tracks of the appellant company are at grade with the surrounding streets. The map offered in evidence and attached to the paper-book shows that at Hazelwood avenue the tracks run almost north and south. Of course, the general direction of the line is from east to west, and this leads to some apparent confusion in the testimony of the witnesses. The plaintiff with her husband lived on Gloucester street which runs parallel with the railroad and right alongside of and at grade with it. She locates her residence as being about three quarters of a square east of the grade crossing at Hazelwood station. No fence or other obstruction separated the tracks from the street. As she herself says in her testimony, "I have nothing to do but to cross the street and two sidewalks on to the railroad." At Hazelwood avenue on which the station building is located the railroad consists of two main tracks, west bound and east bound, and a siding. The siding, which extended but a short distance south or east of Hazelwood avenue, would be nearest to Gloucester street, the east bound track next and the west bound farthest from it, or nearest to Second avenue on the other side of the railroad.

On the night of September 11, 1906, between nine and ten o'clock, the plaintiff's husband left her house to go to

a store on the other side of the railroad to procure an evening paper. She never saw him again alive. No one saw him on his way to the store. No one knows whether he proceeded down Gloucester street and crossed at the crossing at Hazelwood avenue or whether he took the more direct route diagonally across the tracks. He reached the store in safety and left it a few minutes before ten o'clock in company with the witness Douglass. They walked down Hazelwood avenue to a point near the tracks and stood there conversing a short time until a passenger train west bound had passed them. Douglass lived farther west, and after this train had passed he left the plaintiff's husband at the point where they had been talking and started westward alongside of the track. The rear light of the train that had passed was still visible vanishing in the distance. As he walked westward he heard the roar of an approaching east bound express. After he had traveled, as he says, a distance of 175 feet from where he had left the plaintiff's husband, he saw the headlight of the approaching train, and it was then distant from him 210 feet. This would make it clear that at that time the train would be distant 385 feet from one on the crossing.

No human eye saw the plaintiff's husband after he was left by the witness Douglass until he was found in the manner to be described. Whether he began to move immediately after Douglass had left him, no one knows. It is quite clear, if he had, and his motion was along Hazelwood avenue and across the tracks, he would have had sufficient time to have crossed them several times in safety before the east bound express reached that crossing. Not only is there no evidence as to when he started to go from the point where he had been left, but there is absolutely none as to how he undertook to go. No one saw him on the crossing, no one knows that he was on the crossing. It is equally true that no one saw him walking along the tracks or crossing them in the diagonal line that would be the most direct route from the point where he had been left standing to his own home.

At the time the east bound express passed the crossing, and for a very considerable period before that time, two men had been standing at the Second avenue corner of the station house talking together. They had seen nothing of Cawley during that evening. In a few moments after the express train had passed a boy ran up to them and informed them a man had been struck by the train and his body was lying on the tracks. They proceeded at once to see if any aid could be rendered and they found, lying on the right of way between the east and west bound tracks and about thirty feet, as they described it from the crossing, the body of the plaintiff's husband. He expired just as they reached him. They give no further description of the condition of the body except to say that the bones of his limbs were so badly broken a stretcher was required to remove him. This is the whole of the testimony upon which the plaintiff predicates her claim that the defendant is legally responsible for the negligent killing of her husband. We may here add that the testimony shows no blood or other mark of any kind at the crossing to indicate that it was at that point the train struck him.

Now it is manifest that if the deceased were walking along the tracks of the defendant company when he was struck, in other words, if the collision occurred not upon the public highway but at a point east of it on the right of way of the defendant company, the plaintiff cannot recover. Before the defendant could be called upon to answer, there must have been a sufficient basis for the conclusion that the deceased was struck while on a public highway where he had a right to be.

Of course it is absolutely clear, if we may credit the undisputed evidence, that from the time Douglass left the deceased there was nothing to interfere with his safe crossing on Hazelwood avenue for a very appreciable length of time. It is certain that he had all of the time consumed by Douglass in walking 175 feet, after which the headlight of the approaching train became visible to him. There was nothing to obstruct a like view by one crossing

the tracks at Hazelwood avenue.  The roar of the oncoming train was audible to Douglass before he could see the headlight.  It must have been equally audible to one in the act of crossing at the highway who was using his senses, and, as we have already stated, a person so crossing would not only have had all of the time expended by the witness in walking 175 feet, but also the additional time during which the express train was traveling the 385 feet from the point where its light became visible to the crossing.  There were but two main tracks to cross and these could hardly have covered more than a space of twenty feet.

Whilst these considerations might make it very difficult to escape the conclusion that the deceased, even if the evidence had shown he was struck on the crossing, was guilty of contributory negligence in walking in front of an approaching train whose light and noise must have warned his senses, yet we do not refer to them for that purpose.  Rather for the purpose of showing that it is extremely improbable that he was struck on the crossing at all.  But it is not necessary for us to go even that far.  The body of the deceased was found on the right of way of the defendant company.  If he was traveling on that right of way and not on the highway when he was struck, the company is not liable.  The inference that he was so struck is certainly as reasonable and as probable, under the facts we have recited, as the other inference on which the plaintiff's case entirely rests, to wit, that he was struck while attempting to cross on Hazelwood avenue.  In such cases, to permit a jury to draw the inference which convicts the defendant of negligence is but to sanction their conjecture as to the manner in which the deceased met his death.

It is doubtless true that a plaintiff is not required to prove by direct evidence every essential fact of his case.  Where certain facts are established by proof, and where men of reasonable intelligence will naturally and irresistibly draw from those facts a certain conclusion, such

an inference may be drawn by a jury and furnish a sufficient foundation to support a verdict. But where, in an action like the present one, every fact proved will support an inference that excludes liability just as strongly as the contrary one, then we think a jury is stepping into the field of speculation and conjecture when they undertake to say that the theory upon which negligence rests is the one that truly accounts for what actually happened.

But we do not think we are obliged to rest the conclusion we have reached on our own reasoning from the facts exhibited in this record. In Penna. R. R. Co. v. Mooney, 126 Pa. 244, the deceased was the foreman of a gang of men who had been laying some track for the company. A short time before the accident he with his fellow workmen had been walking along the track approaching a crossing called Green lane. At that point he left the track for a few moments. Just as he returned to the track, at the point where the latter and the highway intersected, he was struck and killed. The single witness who saw the collision testified that at that moment he was just stepping on to the tracks along the highway, and in answer to a question, declared that he was not just stepping on the highway from the tracks. In disposing of this question the Supreme Court, in an opinion by Mr. Justice GREEN, said: "It matters but little, however, whether Mooney was crossing the highway lengthwise and between the rails of the track, or crossing the railroad and between the rails in the highway, at the moment he was struck. He was on the track or he would not have been struck. If he was crossing the highway he was a trespasser and there could be no recovery, and if he was crossing the track he was guilty of most manifest contributory negligence in stepping upon the track immediately in front of an approaching engine."

In Welsh v. R. R. Co., 181 Pa. 461, we have a state of facts so similar to those exhibited by the record before us as to irresistibly draw this case into the same category with itself. Mr. Justice DEAN, speaking for the court,

thus states the essential facts of that case: "A highway or street in the borough of Hawley, Wayne county, crosses the railroad track of defendant company at grade. The defendant maintained gates at the crossing, and a man to operate them during the day, but not at night; it also maintained three lamps at the crossing which were kept lighted during the night. Between 9 and 10 o'clock at night, on November 23, 1895, a fireman on an engine which stood on a siding near the crossing, found Patrick Welsh, son of plaintiff, lying a few feet from the crossing between the tracks of the railroad; he was badly bruised and crushed, and died in a few hours afterwards." We perhaps should have stated that in the case before us, as in the one cited, safety gates were maintained at this crossing during the daytime but were not operated at night. The testimony shows that the crossing was lighted with an electric arc light; and thus the conditions present in the two cases seem to have been in every essential way similar, if not identical. Some evidence of negligence in the manner of operating the train having been shown in that case, the learned trial court submitted the question to the jury and afterwards entered a judgment for the plaintiff on the verdict they rendered. In reversing this judgment without a venire, the learned opinion judge goes on in the following language: "No one saw deceased on the crossing; though near to it, he was not on it when found; no one saw him struck by a train. If struck by a train, whether he was on the crossing when struck or was approaching it from the railroad track is not known. Assuming, then, as to the general public, the company was negligent in not operating the gates at night, or in not maintaining a flagman at night, or in not keeping a sufficient light, this negligence must be so connected with the injury to deceased as to afford a presumption that the negligence caused the injury. To make the connection, we must presume he was thrown from the crossing to the track; and further, presume he was lawfully upon the crossing when struck." That language could be applied

with as much force to the facts of this case as in the case where it was actually used. It may be that if it could have been shown that the deceased in this case was struck while upon the crossing, then the fact that he had been moving along the highway a few moments before towards the crossing and towards his home might furnish ground for the presumption that he was lawfully upon the crossing. But having assumed that much, there still remains to be taken the all important step that carries us to the conclusion that he was struck while thus upon the crossing, and it is this assumption which it seems to us, in the light of the cases, cannot be distinguished from a simple conjecture.

In Grant v. P. B. & W. R. R. Co., 215 Pa. 265, "The body of the deceased was found on the railroad at some little distance from a permissive crossing, and blood marks at the crossing indicated that he had been struck there. This was all the evidence as to the accident. No witness saw it." In that case it is quite apparent that there existed a fact, certainly of some significance, that is not present in our case, to wit, the blood on the crossing. It would seem as if in such a case there would certainly be stronger ground to support the assumption that the deceased was struck while actually on the crossing than there is in the present case. The only other fact in that case that would at all differentiate it from the one before us is that there was some evidence that the deceased had been known to use the railroad tracks at times when going from his house to the place he had started to reach on the occasion when he met his death. That testimony, of course, did not tend to show that on the particular occasion, then under investigation, the deceased was struck while traveling on the right of way and not while on the crossing. The most it could tend to make clear was that the unfortunate accident might have happened in either way and that it would be simply a conjecture on the part of the jury to undertake to determine what the actual fact was. Therefore the court said: "If deceased was walking the tracks

longitudinally he was guilty of plain contributory negligence, and as the testimony was that he was in the habit of using both ways, the jury could only guess which way he took on that occasion."

If our common experience of the habits of men, and especially of those living in close proximity to the tracks of a railroad, led us to the conclusion that they would never take short cuts across it but always go around by the highway, there might be some stronger ground for the assertion that the inference drawn by the jury in this case was so natural and so in accordance with our common experience that it could properly support a verdict. But unfortunately for this plaintiff, the result on the human mind of familiarity with danger leads to just the opposite conclusion.

But it is argued that this case should rather be classed with those of which Haughey v. Pittsburg Railways Co., 210 Pa. 363, and McGovern v. Union Traction Co., 192 Pa. 344, are illustrations. We cannot think so. In cases of street railways it is to be observed that the foot passenger has a lawful right to the use of any portion of the street. He cannot be convicted of being a trespasser because he is on the tracks of a street railway company at any part of the public highway they occupy. Nor can he be judicially declared guilty of contributory negligence merely from the fact that he attempts to cross the street with an approaching car in sight. Otherwise, in the crowded streets of our cities he could never cross at all, and the doctrine would be impracticable. In Penna. R. R. Co. v. Weber, 76 Pa. 157, also relied on by the appellee, the basic fact that the deceased was killed while on a public crossing was a conceded fact in the case. Here it is the fact not proven and it can only be inferred from other facts which just as naturally and just as properly support the contrary inference that would excuse the defendant from legal liability.

Fairly applying to the case, as we have it before us, the principles declared in the decisions we have cited, we can-

not escape the conclusion that the defendant's case was lacking in one most essential particular, and that consequently the judgment now appealed from is without sufficient legal foundation to support it. The learned trial judge should therefore have affirmed the request of the defendant for binding instructions, and the first assignment of error must be sustained.

Judgment reversed.