# Horen et al. *v.* Davis, Director General, Appellant.

*Negligence — Railroads — Evidence — Physical facts — Judicial notice.*

1. A court cannot accept as true that which the indisputable evidence demonstrates, is false.

2. Where, in a negligence case, plaintiff's own testimony stands not only opposed to that of several disinterested witnesses, but is shown to be untrue by uncontroverted physical facts, it is error to submit the case to the jury.

3. The appellate court should take judicial notice of the laws of nature, mathematics or quality of matter, or whatever it may be that rules the case, and apply it as the trial court should have done.

4. Where a boy ten years old testifies to an accident happening to him when he was seven years old, to the effect that he looked and listened before stepping in front of a moving locomotive at a crossing, his evidence cannot convict him of contributory negligence, but it may be considered in connection with the physical facts in the case, in testing the possibility of his story.

5. In such case a judgment on verdict for plaintiffs will be reversed where it appears that defendant claimed that the boy was injured while stealing a ride, while evidence uncontradicted by plaintiffs shows that he was picked up within a very few seconds after the injury, not on the crossing, but thirty to forty-five feet from it on the right-of-way, without any evidence of injuries on his body other than a severance of his leg, and without marks on the track, showing that he had been dragged, or marks on the engine showing blood, it being manifest that if he had been struck by the locomotive at the crossing, his body would have borne marks of serious injury on other parts of it.

Argued January 13, 1922. Appeals, Nos. 181 and 182, Jan. T., 1922, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1918, No. 2317, on verdict for plaintiffs, in case of Louis L. Horen, by his father and next friend, Samuel Horen, and Samuel Horen, in his own right, v. James C. Davis, Director General of Railroads, operating the Baltimore & Ohio Railroad. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ. Reversed.

Trespass for personal injuries.   Before BARRATT, P. J.
The opinion of the Supreme Court states the facts.

Verdict and judgment for Louis L. Horen for $15,500
and for Samuel Horen for $4,500.   Defendant appealed.

*Error assigned,* inter alia, refusal of defendant's motion for judgment n. o. v., quoting the record.

*H. B. Gill,* for appellant.—The testimony of the boy
and his sister is inherently incredible and obviously untrue.: Lessig v. Reading T. & L. Co., 270 Pa. 299.

The evidence of defendant's witnesses overwhelmingly
contradicts plaintiff's story: Lessig v. Reading T. & L.
Co., 270 Pa. 299; Bornscheuer v. Traction Co., 198 Pa.
332.

*M. J. McEnery,* for appellee.—The minor could not be
held guilty of contributory negligence as a matter of law:
Kremposky v. Coal Co., 266 Pa. 568; Byron v. R. R., 215
Pa. 83.

Firestone v. Ry., 56 Pa. Superior Ct. 42, is directly
in point.

OPINION BY MR. JUSTICE SCHAFFER, May 8, 1922:

Defendant appeals from the refusal to enter judgments
in his behalf notwithstanding the verdicts in plaintiffs'
favor.

Louis Horen, the minor plaintiff, lived with his father
on Third Street, Philadelphia, near the right-angled
grade crossing of this street by the railroad operated by
defendant which runs along and in the bed of Oregon
Avenue. The testimony of the boy and his minor sister
shows he left his home on the afternoon of April 5, 1918,
to purchase candy at a store across Oregon Avenue.
When he reached the railroad crossing, he was instantly
struck by an engine which they say appeared without
warning, running rapidly backward, hauling a long train
of cars.   The boy testified that, before stepping on the

track, he looked for, but did not see, any approaching train, although the day was clear, the track straight for a long distance, and nothing to obscure vision.

Photographs in evidence show Oregon Avenue unimproved for some distance east of Third Street. The latter street was improved, the crossing built up level with the tops of the rails; while there were houses in this locality, it could not be termed a thickly settled neighborhood. The railroad's right-of-way, extending along Oregon Avenue east of Third Street, presented the usual appearance of a roadbed; the ties, however, were not level with the grade adjoining. There was loose dirt at the side of the roadway, and the ballast was unpacked material.

Louis was ten years of age when he testified, but at the time of the accident he was only between seven and eight. His father was employed as a barber; when the case was tried he was selling various things on the installment plan. The verdicts, aggregating $20,000, represent $4,-500 for the father,—including $3,000 as compensation for the loss of earnings from the child's sixteenth to twenty-first birthday,—and $15,500 for the child.

The defendant was charged with negligently running the train at an excessive rate of speed (twenty to twenty-five miles an hour), without giving any warning of its approach. Appellant not only denies these charges, but sets up by way of defense that the boy was neither injured on the crossing, nor struck by the engine, but was stealing a ride on the train, which was traveling at a very slow speed—not more than six miles an hour; that in some way his hold slipped, or he was jolted from the train and fell to the ground, a car wheel passing over his leg. Other boys were running alongside the train, jumping on and off the cars while it was in motion.

It is not denied by plaintiffs that the boy was picked up, within a very few seconds after his injury, not on the crossing but from thirty to forty-five feet east of it, and not on the public highway but on defendant's right-of-way; Weisinger, a witness called for plaintiff, makes

this certain. There is no evidence of any injury whatever on the boy's body to show he had been struck and thrown from the crossing to where he was picked up, none showing his clothing to have been torn; or of any marks along the ballast or the roadway, indicating that his body had been dragged; nor is there evidence of anything in the record explaining how he happend to be found this distance from the crossing. Defendant urges these physical facts demonstrate the story of the boy and his sister to be untrue, that he was injured on defendant's right-of-way and not at the crossing, or by falling from the train, and was therefore a trespasser and cannot recover: Cawley v. B. & O. R. R. Co., 44 Pa. Superior Ct. 340, 345; Hoffman v. Pennsylvania R. R. Co., 248 Pa. 62; Glancy v. McKees Rocks Borough, 243 Pa. 216, 219; Runkle v. Pittsburgh, 238 Pa. 349, 352; Ott v. Boggs, 219 Pa. 614, 615; Stringert v. Ross Twp., 179 Pa. 614, 617; Baltimore & Ohio R. R. Co. v. Schwindling, 101 Pa. 258; Woodbridge v. D., L. & W. R. R. Co., 105 Pa. 460.

The testimony of the boy and his sister affords no satisfactory explanation of how the accident happened. He did not see or hear the train, and does not know what hit him. She did not know of its approach and said it "shot out," which manifestly does not describe what occurred, as there was a clear view along Oregon Avenue from where the girl was standing for more than a square and a half. Not only are the children's stories controverted by oral evidence, but other indisputably fixed physical facts make it impossible for the boy to have been injured as the children testify. It appears, from the oral and photographic evidence, and is undisputed, that the engine was used as a switch engine, or built similarly to one, being equipped with steps in front and rear, for train crews to ride on while engaged in shifting work. At the time of the accident, it was running backward, tender first, hauling a train of fifty-one cars. The step at the rear extended along the end of the tender, reaching to the ends of the ties, or to points parallel with the sides

of the tender; the step was separated in the middle by the tender coupler. Both children testify plaintiff was struck when he reached the track. This boy, three feet six inches in height, standing on the crossing, either over the rail or between the rails, would have been first struck by the step between the ankles and the knees; or, if he had advanced to the middle of the track, where the coupler separates the step, he would have been hit about the head and shoulders, either by the end of the tender or the coupler. If he had been thrown the intervening space of thirty to forty-five feet, from where he was struck to where he was picked up, or if struck by the coupler or tender, his body would necessarily have exhibited serious wounds; and yet, from all the evidence, there was not the slightest injury on his body except the one noted, the severance of his leg, though the train was alleged to have been running at a speed of twenty-five miles per hour, and he was found thirty to forty-five feet away from the place where it is claimed he was hit. An examination of the engine and tender, made within a very short time after the accident, disclosed no sign of blood on them.

There is another matter of importance. The plaintiff, at the time of the accident, was past seven years of age; when he reached the crossing, according to his testimony, he made the necessary examination to ascertain whether there was anything on the track. He looked up Oregon Avenue just before committing himself to the act of crossing, and then was immediately hit. He did not see the engine before it struck him, notwithstanding the fact that it was a clear day, and his vision up Oregon Avenue for many squares was unobstructed. Had this been the story of a grown man, it would have been unworthy of belief, for we have frequently said that it is in vain for one to say he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive. Because of his age, the boy cannot be convicted of contributory negligence as a matter of law; but, when we consider this evi-

dence in connection with the physical facts, it aids in testing the possibility of the boy's story.

The girl states that, from her house, she could see some distance up Oregon Avenue; yet, though she was watching her brother all the time, she first saw the train just as it hit him. This also must be considered in the same way,—in connection with the physical facts.

In addition to the facts already narrated, we have the evidence of three or four disinterested witnesses that the boy was holding on to the side of the train stealing a ride. Mrs. Mason, who was looking for her son among these boys, testified she saw the boy hanging to the side of a car as the train was traveling slowly along; her daughter, who accompanied her, testified to the same effect; William Little, who talked with the boy shortly after the accident, states the lad told him in the presence of his father, he saw other boys get on the cars, and he grabbed hold of the step and fell. Hoffman, who was taking a ride on the train with the witness Weisinger, says the boys were running after it, sticking out their hands, and when asked, "Didn't you see the little boy who was hurt sticking out his hand?" replied "I did," and admitted that the boy was "hurt" east of Third Street, or away from the crossing. And Weisinger, for plaintiff, states that, when he, Weisinger, was still riding on the train, he saw the little boy lying on the ground, and, when he jumped off at the crossing, the boy was some distance east, or ten or fifteen yards from the crossing. He "jumped off when he [the boy] was hit; he screamed and I jumped and picked the boy up." Yet fully 125 or 150 feet of train, consisting of the engine and cars, had passed the crossing and about 100 feet beyond where the boy was "hit," and "I [Weisinger] jumped and picked the boy up." Mrs. Waxman, another of plaintiff's witnesses, stated she did not see the little boy, though she was watching the train for a square away before it reached the crossing. Fully eight witnesses contradicted

the children,—but we decide the case on the uncontroverted physical facts in evidence.

"As a general rule a suitor is entitled to have his case submitted to the jury on his own interested testimony, although contradicted by disinterested witnesses, the remedy for a perverse verdict being a new trial; where, however, as here, the party's own testimony stands not only opposed to that of several disinterested witnesses, but is shown to be untrue by the uncontrovertible physical facts, the case is different........A court cannot accept as true that which the indisputable evidence demonstrates is false": Lessig v. Reading Transit & Light Co., 270 Pa. 299, 302; Hill v. P. R. T. Co., 271 Pa. 232, 235; Seiwell v. Hines, 273 Pa. 259.

"Even though it [an appellate court] may not be authorized to weigh evidence and pass upon the facts, it may, and should, so use its judicial knowledge as to bring about justice. Thus, there are often undisputed physical facts clearly shown in evidence, and by applying to them a well-known law of nature, of mathematics, or the like, it is demonstrated beyond controversy that the verdict or finding is based upon what is untrue and cannot be true. In such case, it is very generally held that the appellate court should take judicial notice of the law of nature or mathematics or quality of matter, or whatever it may be that rules the case and apply it as a trial court should have done": Elliott on Evidence (Sec. 39) ; Sheppard v. Wichita Ice & C. S. Co., 82 Kan. 509, S. C. 28 L. R. A. (N. S.) 648, 650.

The judgments are reversed and are here entered for defendant.