# Maue, Appellant, *v.* Pittsburgh Rys. Co.

*Negligence—Street railways—Physical facts—Evidence — Case for court—Motorcycle.*

1. In a negligence case, a verdict for plaintiff will be set aside where the incontrovertible physical facts show that the accident could not have taken place in the way plaintiff and his witnesses said it happened.

2. Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible.

3. In an action against a street railway company to recover damages for injuries to two persons riding on a motorcycle, where plaintiffs claim that there was a head-on collision between a moving eastbound trolley car and their motorcycle, the court will set aside a verdict in their favor if the proofs show that the plaintiffs were following a westbound car, that, before the eastbound car reached them, they went around the left side of the westbound car which had stopped, passed it, and losing control of the motorcycle, collided with the side of the eastbound car, and as a result were thrown and injured.

Argued October 8, 1925. Appeal, No. 144, March T., 1925, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1924, No. 1763, for defendant n. o. v., in case of John Maue v. Pittsburgh Railways Co., a corporation now in the hands of Charles A. Fagan et al., Receivers. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for personal injuries. Before KLINE, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff on which judgment n. o. v. was entered for defendant. Plaintiff appealed.

*Error assigned* was judgment for defendant n. o. v., quoting record.

*O. K. Eaton,* with him *H. Fred Mercer,* for appellant, cited, as to the rule in Penna.: Fuher v. Coal Co., 272 Pa. 14.

*William A. Challener,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 23, 1925:

In this case and the one following brought to recover damages for personal injuries growing out of the same accident, the plaintiffs recovered verdicts which were set aside by the court in banc on the ground that the incontrovertible physical facts showed that the accident could not have taken place in the way plaintiffs and their witnesses said it happened and judgments were entered for defendant; in each case the plaintiff has appealed.

Both plaintiffs were police officers in the City of Pittsburgh. Notice was received at the station house to which they were assigned that a murder had been committed and the two plaintiffs were ordered to investigate the crime. Palmer (plaintiff in the other suit) mounted his motorcycle and Maue, who was acting lieutenant of police, took his seat in the sidecar attached to the motorcycle. To get to the scene of the crime they traveled westwardly on Forbes Street, which runs east and west. As they approached the place where the accident occurred, traffic on the street became congested and they had to travel behind a trolley car, likewise proceeding west on Forbes Street. When this car came to a point in the street where there was a down grade on a curve, it stopped and the two officers being unable to pass to the right of the trolley car, because of vehicles standing along the curb on that side, went around it to the left. There were double car tracks in the street and they proceeded alongside the westbound trolley car with the wheels of the motorcycle in the eastbound car track and the wheel supporting the sidecar in the space between the two tracks. As they were traveling in this

position toward the front of the westbound car they noticed another trolley car coming toward them on the eastbound track from one hundred and fifty to two hundred feet away. Both plaintiffs testified that Maue from his seat in the sidecar signalled with his hands to the motorman of the approaching trolley and that Palmer blew the horn of the motorcycle and that they halted their machine about the front end of the stopped westbound car with their motorcycle in the same position with reference to the tracks—the wheels of the motorcycle in the eastbound track on which the trolley car was approaching and the wheel supporting the sidecar in the space between the two tracks with the standing westbound car about forty-three feet long on their right so close that Maue from his seat in the sidecar could have touched it. When they stopped the approaching car was about fifty feet away. They and some of their witnesses said that the eastbound car, without regard being paid to their position, or their signals, came on, struck the standing motorcycle and continued up the grade without stopping for a distance of about one hundred and fifty feet. Both officers were rendered unconscious by the collision and knew nothing of what happened thereafter. Both men testified that they did not pass through the space between the standing westbound car and the approaching eastbound one.

Certain facts are undisputed: The westbound car was at a standstill, the two plaintiffs came around this car on its left (south) side, they stopped their motorcycle about the front end of the standing car with the wheels of the motorcycle in the eastbound track and the wheel supporting the sidecar in the space between the two tracks, which is about five feet in width. The approaching eastbound car was coming uphill; the upgrade continues for more than one hundred and fifty feet east of the point where the plaintiffs say the collision took place. The westbound car did not move from its stationary position until after the accident. The plaintiffs did not

endeavor to cross over the eastbound track and to pass the eastbound car on its south side. The collision did not knock the standing motorcycle up the hill, and the moving trolley car did not run over the motorcycle or over the plaintiffs. The space between the two cars when their front ends were opposite each other was not sufficient for the motorcycle to pass through. The bodies of plaintiffs, who were unconscious, and the motorcycle after the collision were not found in front of the moving eastbound car but a number of feet in front of the standing westbound car. No marks were on the standing westbound car. There were marks along the north side of the moving eastbound car beginning about the middle of it, indicating that the motorcycle had struck that side of it which witnesses for defendant testified was the fact.

One of plaintiff's own witnesses, a police officer named Stoehr, who followed the two plaintiffs in an automobile as they proceeded along Forbes Street testified that he saw the motorcycle go alongside of and around the north side and rear of the eastbound car. In addition to this, several witnesses called for the defendant said that the motorcycle passed the front of the moving eastbound car and struck its north side. The motorcycle did not strike the standing westbound car; the latter did not strike the motorcycle. The motorcycle and its occupants were not knocked to the south side of the eastbound track.

The foregoing undisputed facts incontrovertibly show that plaintiffs' testimony that there was a head-on collision between the moving eastbound car and the motorcycle could not be correct. If the car had struck the motorcycle in the way plaintiffs contend, there would not have been enough space between the two tracks to contain the motorcycle and it would necessarily have either been knocked against the standing westbound car (there were no marks on the car and no one testified to any collision with it) and farther to the east ahead

of the front of the eastbound car, or the eastbound car
would have run over it and its occupants or it and they
would have been thrown to the south of the eastbound
track, which admittedly they were not.   The theory of
the appellant is, with no evidence to support it, that as
a result of the collision the clutch of the stationary
motorcycle became engaged and that it started up, threw
its occupants out and proceeded along the north side of
the eastbound car.   This manifestly could not have taken
place, because,—considering that the space between the
tracks was less than five feet, which would be reduced by
the overhang of the two street railway cars and that the
motorcycle and sidecar were five feet three inches in
width and that when the motorcycle stopped it was not in
advance of the front of the westbound car when the
moving eastbound car is said to have struck it,—there
would not have been space for it to pass between the two
trolley cars after the collision.   It is clear from a read-
ing of the record that, instead of the eastbound car
having struck the standing motorcycle head-on, what
happened was that the plaintiffs in the motorcycle be-
fore the eastbound car reached them went around the
left side of the standing car, passed it and losing control
of the motorcycle collided with the side of the eastbound
car and as a result were thrown from the motorcycle and
received their injuries.

This case is ruled in principle by Lessig v. Reading
Transit & Light Co., 270 Pa. 299, in which, speaking
through Mr. Justice WALLING, we said, at page 302:
"A court cannot accept as true that which the indis-
putable evidence demonstrates is false......Plaintiff's
testimony cannot be accepted in the face of the infallible
physical facts......Courts are not required to believe
that which is contrary to human experience and the
laws of nature, or which they judicially know to be in-
credible......The court will not stultify itself by allow-
ing a verdict to stand, although there may be evidence
tending to support it, when the physical facts demon-

strate such evidence to be untrue and the verdict to be unjust and unsupported in law and in fact." The principle announced in the cited case was reaffirmed in Seiwell v. Hines, Director General, 273 Pa. 259, and in Horen v. Davis, Director General, 274 Pa. 244.

The judgment is affirmed.