# Fontaine et ux. *v.* Pittsburgh, Mars and Butler Railway Co., Appellant.

*Automobile—Street car—Collision with—Proximate cause—Bright headlight—Personal injuries—Damages—Negligence.*

In an action of trespass to recover for personal injuries and property damage arising out of a collision between an automobile and defendant's street car, plaintiffs alleged that the proximate cause of the collision was the use of an unduly powerful headlight on the street car. The evidence disclosed that the accident occurred on a curve in the road and that the highway is on the inside of the curve and the street car tracks on the outside. The automobile and the street car approached the curve from opposite directions and at the time of the collision the automobile had left the highway and was partly across the tracks of the defendant company. The driver of the automobile, one of the plaintiffs, testified that he did not know there was a turn in the road and that he was blinded by the bright headlight on the street car.

In such case the rays of the headlight moved forward in a straight course outside of the curve and if plaintiffs had continued to travel on the paved surface of the road on the inside of the curve they could not have been blinded by the glare of the headlight.

Under such circumstances judgment for the plaintiff will be reversed.

Argued April 18, 1927. Appeals Nos. 178 and 179, April T., 1927, by defendant from judgments of C. P. Butler County, June T., 1926, Nos. 15 and 22, in the cases of J. F. Fontaine and Catherine Fontaine v. Pittsburgh, Mars and Butler Railway Company, and Sylvia Myers, by her mother and next friend, Minnie Myers, and Minnie Myers v. Pittsburgh, Mars and Butler Railway Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Trespass to recover for personal injuries and property damage. Before HENNINGER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict in favor of Catherine C. Fontaine in the sum of $1,000, and in favor of Sylvia Myers in the sum of $300, and judgments thereon. Defendant appealed.

*Errors assigned,* among others, were the charge of the court and refusal of defendant's motion for judgment non obstante veredicto.

*J. Campbell Brandon,* and with him *W. D. Brandon* and *F. Clair Ross,* for appellant.

*James E. Marshall,* and with him *Thomas W. Watson* and *Harry L. Graham,* for appellees.

OPINION BY LINN, J., July 8, 1927:

About 6.30, after dark on a rainy evening in November, J. F. Fontaine, while driving south on the Butler Pike in the open country in a five passenger closed automobile, containing his wife (appellee in 178, April T., 1927) and Sylvia Myers (appellee 179, April T., 1927) and three other persons, was struck by a north bound interurban street car, about 50 feet long, containing many passengers travelling northward between Pittsburgh and Butler. Mr. Fontaine and his wife and Miss Myers brought suits for damages; the cases were tried together below, were argued together here, and will be disposed of in one opinion. The jury found against Mr. Fontaine, but rendered verdicts in favor of his wife and of Miss Myers. The important question is whether the record contains any evidence of negligence of appellant. Appellees contend that the proximate cause of the collision was the use of an unduly powerful headlight on the street car. We, of course, now take the oral evidence most favorably supporting the verdict, but at the same time, are bound to give effect to the evidence of undisputed physical facts

shown in the record relating to the occurrence (Carroll v. R. R. Co., 12 W. N. C. 348, Horen v. Davis, 274 Pa. 244, and cases cited P. 250; Maue v. Pbg. Rwy. Co., 284 Pa. 599), and they show that the headlight was not the proximate cause.

A clear understanding of the physical conditions is therefore desirable. The Butler Pike is about 33 feet wide with a ditch on each side; about 18 feet of surface is paved with concrete, and on the west side of the concrete surface, and between it and the ditch on that side, is the street railway track, paved between the rails with brick. There is a curve in the road at the point where the collision occurred; "a very abrupt curve" one of appellees' witnesses described it.

Mr. Fontaine was driving south, slightly downgrade, and had entered on the curve when struck, though as he testified, he "didn't know there was a turn there." The street car was moving north on an ascending grade, and had reached the same point in the curve (although from the opposite direction) reached by Mr. Fontaine. He testified that he first saw the street car light when he was about 100 feet from it. He was asked in chief: "Q. Will you just state what was the first thing you saw or that happened before this accident, just immediately before? A. I noticed a bright light coming toward me which I took to be a one Ford light, with one headlight, and just in a moment it seemed that a flash of light hit us in the face and the children screamed and I realized by the height of the light and high power that it was a street car; I stepped on my brakes and the wet pavement it seemed it didn't grab the brakes tight enough and I drifted ahead.

. . ... .· . . . . . . . . . . ... .

Q. What was the effect, if any, of the light on you and what happened?

A. It blinded me so I didn't know where I was going; I drifted ahead.

. . . . . . . . . . . . . . .,. . ..

Q.   How did the car go?   In what direction, as to whether you went straight ahead?

A.   Straight ahead, yes, sir.

. .... . . . . . . . . . . . .,. . .

Q.   State as near as you can where the accident took place?

A.   Well, between that embankment and the car track.

Q.   You got down and got on the car track?

A.   I got past the car track just when the car hit me."

That embankment was beyond the western boundary of the pike and the ditch on that side.   He said "it was awful wet; it had rained all day and was still raining." His car was equipped with an automatic wind shield wiper, furnishing a small semi-circular clear space for observation.   The jury was instructed that neither want of signal nor speed of the street car was involved.

As he drove south while the street car moved north, he was on the inside of the curve and the street car on the outside; the 100 feet between him and the street car when he first saw it and thought it a Ford light, were covered in very short time (or as he said "just in a moment") by the approaching vehicles for he was traveling, he testified, between "15 and 22 miles" an hour.   The glare of the street car light gave him no inconvenience when he first saw it 100 feet away, for the obvious reason that its rays moved forward in a straight course outside the curve, while he moved on the inside; and if he had continued to travel on the paved surface of the road on the inside course of the curve, as the street car moved on the outside, he could not have been blinded by the glare; to be affected by the glare as described in his testimony, it was necessary for him to get sufficiently in front of the street

car to come within the influence of the outward direction of the glare; and his testimony and that of the occupants of his car show that is what occurred. He drove on the track not because of the effect of the light on a driver traveling on the paved surface inside the curve, but because he "didn't know there was a turn there" and because his brakes would not hold when he applied them. The record is clear that before he realized there was an "abrupt curve" in the road, he had left its course, moved "straight ahead," and was on the car track, then of course, in the full glare of the street car light, which "just a moment" before he had seen, without inconvenience, 100 feet ahead; the collision was then, of course, inevitable, but his dangerous position was not caused by the light; that was not the proximate cause of his missing the turn and driving across the car track; no other negligence is relied on. Asked whether "at the time this light struck you, what direction did you pursue, as to whether right, left or straight ahead?" he answered: "Straight ahead." Mrs. Fontaine said: "that the light came so sudden, a flash in my face like a blinding light, just blinding right in my eyes and after that I can't remember nothing." Miss Myers, on the back seat, could not see the roadway, but when the children screamed, she "noticed the bright light." Mrs. Pfeiffer, who was also in the automobile said: "I seen a big bright light and heard the children screaming and heard the crash; that is all I know." She was unable to see whether the car was on the road when she first saw the light, because "it was drizzling raining and the steam was on the windows, and I could not see where we were going."

After plaintiff's car crossed the car tracks, it was stopped by the bank on the west side of the road, and was standing partly in and across the ditch, with the left rear of the automobile near enough to the

street car track to be struck when the street car came along. Mr. Fontaine was asked: "Did any part of your car strike the street car before it was in the ditch?" He answered: "No, sir." When the street car came along, Mr. Fontaine's car, he said: "was pushed aside like." Those are the undisputed physical facts considered in relation with the evidence of Mr. Fontaine and his witnesses, and they show conclusively that the proximate cause of the collision was not the headlight of the street car.

No. 178 judgment reversed and here entered for defendant.

No. 179 judgment reversed and here entered for defendant.