## Folger, Appellant, v. Pittsburgh Railways Co.

*Negligence—Street railways—Automobiles — Collision — Judgment n. o. v.—Physical facts—Evidence.*

1. Oral evidence clearly shown to be false or mistaken by incontrovertible mathematical tests or physical facts must be rejected.

2. In an action against a street railway company for damages for personal injuries suffered in a collision between a trolley car

and plaintiff's automobile, a judgment for defendant n. o. v. is properly entered where it appears that it was physically impossible for the accident to have happened in the manner described by plaintiff and her witnesses.

Argued September 27, 1927.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeal, No. 124, March T., 1927, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1924, No. 156, for defendant n. o. v. for plaintiff, in case of Hazel E. Folger v. Pittsburgh Railways Co.    Affirmed.

Trespass for personal injuries.    Before GRAY, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff on which the court entered judgment for defendant n. o. v.    Plaintiff appealed.

*Error assigned* was judgment n. o. v., quoting record.

*Rody P. Marshall,* with him *Meredith R. Marshall,* for appellant.—Before evidence is rejected the proof must amount to a demonstration that plaintiff's account of the accident could not be true: Fuher v. Coal Co., 272 Pa. 14; Coyne v. Lackawanna Co., 53 Pa. Superior Ct. 603; Kennelly v. Waropoyak, 266 Pa. 94.

*E. W. Langfitt,* for appellee.—Plaintiff's evidence was so contrary to human experience and the laws of nature that it was incredible and unworthy of belief: Maue v. Rys., 284 Pa. 599; Mack v. Gypsum Co., 288 Pa. 9; Horen v. Director General, 274 Pa. 244; Seiwell v. Director General, 273 Pa. 259.

OPINION BY MR. JUSTICE WALLING, November 28, 1927:

On July 1, 1922, the plaintiff, while driving an automobile along Boggs Avenue, Pittsburgh, was injured by a collision with one of defendant's trolley cars, where it intersects Soffel Street.    The present action, brought

on account thereof, resulted in a verdict for plaintiff, which the court in banc set aside and entered judgment for the defendant n. o. v., on the ground that the accident could not have happened in the manner described by plaintiff.   We concur with this conclusion.   Defendant has a double track railway in Soffel Street, the latter being crossed at right angles by Boggs Avenue, a north and south street.   On defendant's south track, which is eastbound, there is a safety stop ten feet west of the property line on the west side of Boggs Avenue and a derail switch about fifty feet east of that street. Each street is of the width of fifty feet and has a thirty foot paved cartway in the center.   On the occasion in question, being about six o'clock p. m., defendant's eastbound car made the usual safety stop, at the point indicated, and then proceeded across Boggs Avenue at the speed of about three miles an hour.   It was compelled to stop on the east side of the avenue because of the derail switch; this was also a regular stop for the accommodation of passengers.   Coming from the north, Boggs Avenue approached Soffel Street on a twelve per cent descending grade, but continued across the latter on practically level ground.   While defendant's car was passing over the intersection, plaintiff's automobile, driven by herself, with her mother as a passenger, coming from the north in Boggs Avenue, collided with the left rear corner of the street car, by which it was deflected and ran about thirty feet, landing against an iron pole at the southwest corner of the intersection.   Plaintiff was seriously hurt and her car wrecked.   Her testimony, corroborated by her mother, was that it had been raining and the street was wet, muddy and slippery, so that as she came within about seventy-five feet of the place of accident her car, in second gear and moving about seven miles an hour, slipped and skidded as she applied the brake; that at the same time she saw defendant's car standing at the safety stop and blew her horn; that the motorman smiled and soon started his

car forward; that later the rear end of her automobile skidded around to the east so that the automobile stood directly across the street, and in that position slid down the hill and over the level space of at least twenty-seven feet in Soffel Street and crashed broadside against the street car near its rear end and then passed on to the iron pole. She also says that during this horizontal slide the automobile gained in velocity from seven to ten or twelve miles an hour and that she completely lost control of it; also that she and her mother screamed and said, "Hurry, hurry," to which the motorman smiled again but failed to speed up his car.

For the defense, the motorman testified that, from the safety stop, he could see up the street about one hundred and fifty feet and that plaintiff's automobile was not then in sight; that he moved forward, sounding his gong, heard no horn or outcry and knew nothing of plaintiff's approach until the collision. He was corroborated by a number of disinterested witnesses who were on the car or near by and said plaintiff's automobile came down the hill at twenty-five or more miles an hour; that they heard no signal and that plaintiff had her hands on the wheel and was apparently in control of the automobile, which came head on without slipping or skidding sideways; but, just before the collision, was turned to the right (west) in a belated effort to avoid the street car. Failing in this, it struck the corner of the car and veered off to the iron pole, as above stated. There was room in the cartway of Boggs Avenue for the automobile to have passed safely to the rear of the street car. As to some of the pertinent facts there is no conflict in the testimony: That because of a building on the southwest corner of the intersection, the motorman, at the safety stop, could not have a long view up the avenue; that his car moved forward at a speed not exceeding three miles an hour; that at the moment of the collision the rear end was approximately in the center of the cartway of the avenue and stopped within

two feet and that the automobile started down the hill at a speed of not less than seven miles an hour, increasing to ten or twelve as it came to the point of accident (defendant's witnesses say much faster), are all uncontested facts. Hence, between the safety stop and collision, the street car must have moved its length, shown to be not less than forty feet, and also the distance the rear end of the car had passed beyond the safety stop, approximately thirty-five feet; in all, about seventy-five feet. All this time, plaintiff's automobile was moving at an average speed of at least eight miles an hour; so that, as the street car started forward, the automobile must have been about two hundred feet away, and the contention that it was only fifty to seventy-five feet away cannot be accepted.

Again, while it is common experience that an automobile may skid on a slippery hill and turn part way around, go into the ditch or do some other unexpected thing, it does not accord with human experience that it will turn square across the cartway and slide broadside down the hill and keep on thus sliding over a level space twenty-seven feet wide, and then, after a collision, go forward thirty feet without any apparent motive power. The friction of the wheels going sidewise over the pavement would have stopped such movement, in any event when it came to level ground. It may safely be accepted as a physical fact that a vehicle on wheels will not move directly sidewise for a considerable distance on a level street by its own momentum, gaining in velocity as it does so. The court in banc rightly found as a physical fact that the accident could not have so happened. Plaintiff testified that the automobile would have stopped on the level space but for the presence of defendant's car, ignoring her contention that it failed to do so, or even slacken its speed, on the twenty-seven feet. The physical facts show the automobile must have approached head on, as stated by defendant's witnesses. Furthermore, plaintiff and her mother say, as above

stated, that as they approached the street car they shouted, "Hurry, hurry," to which the motorman merely looked up and smiled. At that moment the motorman was at or east of the east property line of Boggs Avenue, facing east, while they were in the west side of the cartway and, according to their version, facing west. This would make him and them back to back, at least diagonally, with the rear of the automobile and the side of the car as obstructions to view. So the statement that they then saw him look up and smile at them cannot be accepted. The rule is well established that oral evidence clearly shown to be false or mistaken by incontrovertible mathematical tests or physical facts must be rejected. The most recent discussion of the question is by the Chief Justice, in Hartig v. American Ice Co. et al., 290 Pa. 21, 27. The rule stated in the opinion of this court by Mr. Justice (later Chief Justice) BROWN, in Bornscheuer v. Traction Co., 198 Pa. 332, 334, that, "When, with the certainty of an infallible mathematical test applied to the testimony of a witness, he is found to be mistaken in a material matter, it would be a travesty upon justice to allow a jury to consider such testimony, and a license to them to render a false instead of a true finding; such testimony is either intentionally false or mistakenly so; and, in either case, the court should instruct the jury to disregard it," has been repeatedly affirmed and steadily adhered to. See Lossig v. Reading Transit & L. Co., 270 Pa. 299; Hill v. Phila. Rapid Transit Co., 271 Pa. 232, 236; Radziemenski v. Balto. & Ohio R. R. Co., 283 Pa. 182; Mack v. U. S. Gypsum Co., 288 Pa. 9; Grimes v. Penna. R. R. Co., 289 Pa. 320. "Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible": Maue v. Pittsburgh Rys. Co., 284 Pa. 599; Seiwell v. Hines, Director Gen., 273 Pa. 259; and see Horen v. Davis, Director Gen., 274 Pa. 244.

The judgment is affirmed.