Cain et al. *v.* Booth & Flinn, Ltd., Appellant.

Argued September 28, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*Simon T. Patterson,* with him *George R. Wallace,* of *Wallace, Patterson & Collin,* for appellant.—There was

no evidence to connect defendant with the ownership of the blasting caps which caused the injury.

The court should have granted defendant's motions for binding instructions and for judgment non obstante veredicto: Birnbaum v. Ry., 249 Pa. 238; Loughlin v. R. R., 240 Pa. 174.

It is impossible under the testimony to determine where the three caps, one of which injured plaintiff, came from: Salerno v. Ry., 46 Pa. Superior Ct. 243; Wolk v. Hotels Co., 284 Pa. 545; Zeher v. Pittsburgh, 279 Pa. 168.

There was no negligence of defendants: Erb v. Transit Co., 256 Pa. 567; Kemmler v. Penna. Co., 265 Pa. 212.

*J. Thomas Hoffman,* for appellee, cited: King v. Darlington, 284 Pa. 277; Beisecker v. R. R., 276 Pa. 87; Stemmler v. Pittsburgh, 287 Pa. 365; Wallace v. Auto Co., 239 Pa. 110; Loughlin v. R. R., 240 Pa. 174.

OPINION BY MR. JUSTICE WALLING, November 26, 1928:

These two appeals are from judgments entered in the same case and will be considered together. On March 17, 1925, Isaac, the minor plaintiff, then seven years of age, lost his eyesight by the explosion of a dynamite cap, with which he was playing. This suit, brought against the defendants, Booth & Flinn, Ltd., on the contention that the dynamite cap came to his possession through their negligence, resulted in verdicts and judgments for the plaintiffs and defendants have appealed.

The defendants, from 1923 to 1925, inclusive, were engaged in the construction of a public highway, extending easterly from Wilmerding, in Allegheny County to Trafford City, passing through Pitcairn. Blasting was done at some points to facilitate excavations. For this purpose the dynamite was exploded by means of caps, connected by wire to an electric battery. Dynamite caps, containing a high explosive, known as fulminate of mercury, are attached to wires, varying in length from

three to thirty feet. This road work included the construction of the Moss Side Bridge, where the farm occupied by plaintiffs abutted on the north side of the highway. There was a path leading across the field from near this bridge to plaintiffs' residence. On the afternoon of March 16, 1925, as Isaac's brother, Robert, some nine years old, entered this path on his way home, he found three dynamite caps, with wires six or eight feet long, two in the field and one on the road side of the fence. These he took home, but, concluding they were useless to him, threw them on the trash pile. Here Isaac found one the next day, and, wishing to use the wire, took a hatchet to cut it off, but missed his aim and struck the cap, which exploded. Knowing nothing of the nature of the caps, the boys were blameless.

The caps were of the common type, sold by dealers generally, without any means of identification and were not traced to defendants' possession. There was evidence, however, that defendants had done blasting the previous season along the highway and also that there was at least one blast down by the bridge some three weeks prior to the accident and about the same time some blasting was done twenty-eight hundred feet to the east of it. Also that a day or two after the accident some forty or fifty dynamite caps were found at the base of a tree in the edge of the woods, about nine hundred feet from the road and fifteen hundred feet from the bridge, near a spring, where defendants' employees sometimes went for water. It also appeared that defendants bought a supply of dynamite and caps for this job in April, 1924, and again on February 18, 1925. It further appeared that the Duquesne Light Company was erecting a line of poles along this road when defendants were working thereon and a witness, named Pyle, testified that in February, 1925, he saw a package of dynamite caps near the bridge and another about one-half mile east, each at the butt of a pole lying on the ground. It does not appear that either belonged to the defendants or was

placed there by them. There was testimony for plaintiffs that in January, 1925, children, coasting down the hill, traversed by the path above mentioned, found some dynamite caps in the field and used the attached wires in drawing their sleds, until a man warned them of the danger.

The defendants' employees who did the blasting on this job were called as witnesses and each denied losing or leaving any dynamite caps and said what they did not use were destroyed or removed and locked up in their shed a mile from the bridge. There was a near-by brick yard where dynamite was used, as it also sometimes was in digging holes for poles and in mines located in the neighborhood. Again it is a matter of common knowledge that dynamite is used in clearing land and often in excavating, and wherever used it is usually exploded by caps like those involved in this case. Considering the place where Robert Cain found them, a probable theory would seem to be that they were the caps used by the children in coasting there in January. If so, they were not a part of those bought by the defendants on February 18th, or seen by Pyle at the butts of poles during the month just mentioned. It is at least as probable that the caps in question were left there by the children as by the defendant's employees. It is also as probable that the caps seen at the butts of poles were left there by the light company as by the defendants. Each was using more or less dynamite along this road, but denied its use or the necessity therefor at or near the bridge.

There is nothing to indicate that the caps found in the woods were the property of the defendants or in any manner related to the accident. That defendants' foreman caused them to be placed with the chief of police at Pitcairn, for safe keeping, after the suit was brought, does not prove ownership, nor does their subsequent loss. If the caps found by the children, back in the field, in January, belonged to the defendants, then they must have been left there the previous season, of which there

is neither proof nor strong probability. We may assume that whoever left these dangerous explosives where they could fall into the hands of children, was negligent, but our question is as to the culpable party. Of course, negligence may be established by circumstantial evidence, where it creates a reasonable probability of the defendant's fault, and excludes every other reasonable cause. See Wolk v. Pittsburgh Hotels Co., 284 Pa. 545. In Zeher v. Pittsburgh, 279 Pa. 168, 170, Mr. Justice KEP-HART, speaking for the court, says: "Negligence need not be established by direct proof, but may be shown by circumstantial evidence. When such testimony is offered, the inference therefrom must establish that an accident resulting from the cause assigned was the natural and probable consequence. Where an inference can reasonably be drawn leading to a conclusion it was due to other causes [for which the municipality would not be liable], any finding by the jury represents nothing more than a guess on the main fact involved; courts could not sustain a verdict under these circumstances." To like effect is Propert v. Flanagan et al., 277 Pa. 145, 146; Bruggeman et ux. v. York, 254 Pa. 430; 17 C. J. 1304. And, as stated by Mr. Justice FRAZER, speaking for the court, in Erbe v. Phila. R. T. Co., 256 Pa. 567, 570: "To submit the case to the jury upon testimony of the indefinite character presented here, is to permit them to find a fact without evidence to support such finding. The burden was on plaintiff to show that defendant's negligent act was the sole and proximate cause of the death of his wife, to the exclusion of other causes. To show a state of facts from which it appears the injury may have been due to one or more causes is not sufficient." See also Cawley v. Balt. & Ohio R. R. Co., 44 Pa. Superior Ct. 340. A party is not liable for a wrong because it must have been committed by himself or by some one else. The defendants are not liable because either they or some other party left the dynamite caps exposed. Where dynamite is in so many hands in the

immediate locality, the mere finding of caps in an open field, without more, is not sufficient to fasten liability upon any one. See Gralka v. Worth Bros. Co., 245 Pa. 467; Birnbaum v. Phila. & R. Ry. Co., 249 Pa. 238. It is unfortunate that dynamite caps, made by many companies, without means of identification, are sold without restraint. This renders it difficult to fix responsibility for their careless handling. In the instant case the fault may have been that of the defendants, as so ably urged by plaintiffs' counsel, but as other reasonably possible causes were not eliminated, the finding to that effect was a mere guess and cannot be sustained: Wolk v. Pittsburgh Hotels Co., supra; Fleccia v. Atkins, 270 Pa. 573; Glancy v. McKees Rocks Boro., 243 Pa. 216; Ginn v. P. R. R. Co., 220 Pa. 552, 555.

Other questions raised in the record need not be considered.

The judgments are reversed and are here entered for the defendants non obstante veredicto.