## Kemske v. City of Philadelphia.

*Edgar Lank*, for plaintiff.

*Harry S. Platowsky*, Assistant City Solicitor, for defendant.

KUN, J., Dec. 30, 1929.—Plaintiff brought suit against the City of Philadelphia to recover damages for the death of her husband, alleged to have resulted from the alleged negligence of the defendant, due to the existence of a hole or depression in Tacony Street or State Road near Shelmire Street, into which the wheels of the truck upon which decedent was riding sank, and, as alleged in the statement of claim, "thereby caused the said Frederick Kemske to be knocked and hurled from said truck into the said street," whereby he received serious injuries, resulting in his death.

The evidence presented at the trial showed that the occurrence took place on June 28, 1927, at about 2 o'clock in the afternoon. Tacony Street or State Road was not then a regularly paved city street, but a macadamized road, which was higher in the centre and sloped off toward the edges, the centre portion of which only was paved. The location is in the northeastern section of the city, a portion then not fully developed. A sewer was being built along the east side of the road and the work had been going on for three or four months, so that only the west side of it was open to traffic, leaving sufficient width for only one lane of travel, so that when vehicles proceeding in opposite directions met, one of them was obliged to pull out to the side of the road to permit the other to pass. There were ruts and holes all along the road while the work was going on. The testimony also discloses that about where Shelmire Street would intersect State Road, if cut through, there was a sewer manhole in the road near the centre, and on the west side of the road, about twenty-five feet south of Shelmire Street, there was a large tree with overhanging branches. A large building was being erected on the east side of State Road just north of Shelmire Street.

The testimony disclosed that the decedent, an employee of the Belmont Iron Company, was engaged with others in the work of hauling steel to the building operation referred to, his especial job being to walk with another employee behind the truck used in transporting the steel, to direct its course, so that it would not come in contact with any object and possibly do damage. According to the proofs, the decedent and his co-employees had been hauling steel girders in that way over the same route for several days.

On the day of the accident, they were hauling a steel girder, some twenty feet long, five or six feet high, and weighing about three and a-half tons, which had been placed on the truck crosswise or at right angles, so that it extended out about seven feet beyond the truck on each side. The girder was blocked and lashed down to the truck. The decedent and his fellow-employee, charged with the specific duty of walking behind the truck to guide its safe course, shortly before the accident, in violation of that specific duty and in violation also of specific orders not to get on the truck, sat themselves on the rear of the truck, the decedent with his back to the girder and the other on the end of the girder. The truck was proceeding at a very slow rate of speed.

There were two witnesses to the fact question called. The first witness was the driver of an automobile following behind another automobile which was immediately back of the slow-moving truck. This witness testified that while he was so proceeding he saw the truck bounce at the time when the right wheel of it went into a depression in the road, which, he stated, shook the girder, rocking it from side to side and finally breaking its lashings, caused it to be knocked entirely off the truck, during which process the decedent was struck. This witness described the hole or depression into which he said the right wheel of the truck slipped as being about four feet long and extended across the road two feet wide and one foot deep, and he fixed the location of it about twenty-five feet beyond the tree on the west side of the road, heretofore referred to, and said it had existed there for several months before the accident. It appeared to the Trial Judge at the conclusion of this witness's testimony that the manner in which he described the occurrence to have taken place was contrary to human experience, and it was incredible that a girder, blocked and lashed to a truck as described, would perform the antics described by the witness, because of the mere slipping of one of the wheels of the truck into a one-foot depression in the road, particularly in view of the fact that the truck was proceeding very slowly.

The situation was entirely cleared up by the next witness, who was a fellow-employee of the decedent, who testified as to their duties with reference to proceeding on foot behind the truck, as above stated. This witness testified that it was not twenty-five feet beyond the tree where the accident happened, but it was about opposite the tree where the wheels of the truck went into a hole at that point, which caused the end of the girder to strike the tree. Obviously that was the thing that tore the heavy girder away from its lashings so suddenly, it seems, that the decedent unfortunately did not have sufficient time to escape the injuries which resulted in his death. The fellow-employee, who was on the end of the girder, was able to jump off and escape injury. There was no description of the hole referred to by this witness or any testimony of its prior existence.

There are a number of reasons why it was proper to enter a non-suit in this case. That the decedent was guilty of contributory nebligence was clear. He was under specific orders to avoid danger, not only for himself but for others, and for that reason was directed to walk behind the truck with the heavy girder on it, to guide its course so that it would not strike any object or person on the way. Instead of that, right before the accident, he sat himself on the back of the truck, practically under the heavy girder which it was moving, when the end of the girder struck the tree, which was the very thing decedent' was employed to try to avoid. It may be said, in passing, that at the time of the accident, the driver of the truck was alone in the cab on the front of it, so that if the decedent had had any right at all to ride on the truck, it would have been his duty to take that seat and not stand or sit on the platform, and this without regard to the presence of the heavy girder on it: Zavodnick v. A. Rose & Son, 297 Pa. 86.

The decedent placed himself in a position of such manifest danger in violation of his duty that he must be charged with contributory negligence. The presumption of due care on his part was completely rebutted by the testimony produced on behalf of the plaintiff.

It seems unnecessary to make any further comment about the case. Aside from the question of contributory negligence, there is no basis on which the case could go to a jury. If the plaintiff's case rested on the testimony of the first witness and it went to a jury, a verdict for the plaintiff would have to be set aside because of the incontrovertible physical facts which show that the accident could not have taken place in the way he testified it did; that is to say, a three and a-half ton girder, blocked and lashed down to a truck, could not be completely torn away from its fastenings and thrown off the truck because a wheel of the truck went into a one-foot depression in a road while the truck was proceeding at a slow rate of speed. Courts are not required to believe that which is contrary to human experience and the laws of nature, or that which they know to be incredible: Maue v. Pittsburgh Rys. Co., 284 Pa. 599; Folger v. Pittsburgh Rys. Co., 291 Pa. 205.

The case could not go to the jury on the testimony of the second witness, a co-employee of the decedent. This witness also stated that the wheels of the truck went into a hole (not the one the first witness testified to), adding that the end of the girder then struck the tree. It cannot be argued that the proximate cause of the result was that defect in the road, because there was no evidence in the case of the nature and extent of or of the prior existence of that hole. The hole that was properly described by the first witness was located by him some twenty-five feet beyond the tree.

The testimony in this case did not present one in which there were mere contradictions of details of an occurrence which a jury might harmonize, but

56

one rather in which it appears that on no theory could the plaintiff recover, or, to put it more favorably, if it could be said the plaintiff might recover on one of the theories, recovery could not be had on the other, and in such a case the jury cannot be permitted to guess at a favorable result to the plaintiff: Bruggeman *v*. York, 254 Pa. 430; Murray *v*. Pittsburgh, etc., R. R. Co., 263 Pa. 398; Zeher *v*. Pittsburgh, 279 Pa. 168; Cain *v*. Booth & Flinn, 294 Pa. 334.

The court knows of no legal theory on which this case could have been submitted to the jury, though there are other reasons which justify the court's action in entering the non-suit, unnecessary, however, to add. It is better in such circumstances to declare the law and enter a none-suit, rather than to permit a jury to indulge in a useless speculation, because a verdict for the plaintiff could not stand.

Motion to take off the non-suit is overruled.