## Peruzzi *v.* Pennsylvania Railroad Company, Appellant.

Argued April 29, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-NINGHAM and BALDRIGE, JJ.

*Robert L. Dalzell,* of *Dalzell, Dalzell & McFall,* for appellant.

*C. J. Tannehill*, and with him *Marshall & Marshall*, for appellee.

Opinion by Keller, J., July 10, 1930:

The plaintiff recovered a verdict of $3,500, (of which $1,000 was afterwards remitted), damages for injuries suffered by him when his automobile, which he was driving, was run into and demolished by one of defendant's express passenger trains. Defendant appeals from the refusal of the court below to enter judgment non obstante veredicto in its favor.

The accident occurred at a grade crossing a short distance west of the defendant's station at Harmarville, Pa. The railroad at this point runs east and west, east going towards Aspinwall and west towards Pittsburgh. The Freeport Road, a public highway, runs parallel to the railroad and north of it at this point. A road leading southwardly from it crosses five tracks of the railroad at grade at a right angle. Three of these tracks are sidings, two are main running tracks. Approaching from the Freeport Road they come in the following order: first siding, second siding, west bound track, east bound track, third siding. Between the Freeport Road and the first siding is located the single track railway of the Allegheny Valley Street Railway Company which is 23 feet north of the siding. The crossing makes a gradual ascent of "five feet and some inches" from the first siding track to the two main running tracks. The tracks are all standard gauge, (4 ft. 8¾ inches). The space between the first two sidings at the center of the crossing is six feet; between the second siding and the west bound track, eight feet; between the two main tracks, seven feet; and between the east bound track and the last siding, seven feet. Mr. Montgomery, assistant supervisor for the defendant, who made the plan offered in evidence, testified that the distance between the first and last rails of the defend-

ant's tracks was forty feet, but he was obviously mistaken. The distance is approximately fifty-two feet, and may be so measured on the plan drawn to scale, as well as by the details of his evidence. Five tracks of standard gauge cover 23 feet 7¾ inches; the space between them, 6 + 8 + 7 + 7 equals 28 feet, or 51 feet 7¾ inches. From the north rail of the first siding to the south rail of the east bound track is 40 feet. The crossing is of planks and is 20 feet wide.

As the verdict was for the plaintiff all disputed questions of fact must be resolved in his favor. He must be given the benefit of all evidence favorable to him and all inferences fairly deducible therefrom.

The following facts may be thus found from the evidence. On July 13, 1925, at about 3:30 o'clock P. M., plaintiff was driving an open Maxwell touring car eastward on the Freeport Road. He turned south at the Harmarville crossing and stopped his car in the space between the street railway track and the first crossing, about five feet from the northernmost rail, and looked and listened. His view to the west was obstructed by the elevation of the right of way (about five feet) and by some weeds, etc., growing thereon, so that he could not see farther than about 100 feet. No whistle was sounded, bell rung, nor other signal given of an approaching train. He started his car in low gear, and went up the grade over the sidings, traveling very slowly, four or five miles an hour—"an ordinary walk," as one witness put it. He had to look first to his left, the east, for trains approaching on the west bound track, the crossing was rough, with the rails higher than the planks, and he had to look out for foot passengers who were traversing the crossing in the same direction ahead of him. When his front wheels were just past the first rail of the east bound track he saw the defendant's train approaching on that track, 200 feet away, traveling at fifty miles an hour. His automobile was struck in the rear before he had

quite cleared the track, and was knocked in a southeasterly direction, thirty-six feet, to a point in front of the station, while the train ran 960 feet before it could be stopped.

Defendant contends that judgment non obstante veredicto should have been entered in its favor on two grounds: (1) because the negligence of the defendant was not proved; (2) because plaintiff was guilty of contributory negligence.

(1) The alleged negligence of the defendant consisted in running the train at such great speed without any warning of its approach. Defendant's train-men and a number of witnesses testified that the regular crossing whistle was blown west of Deer Creek bridge at the whistling post about 1,300 feet west of the crossing, and the fireman testified that he rang the bell all the way to the crossing, though no other of defendant's witnesses heard it. Four of the plaintiff's witnesses, who admitted they were not paying special attention to the matter, said no whistle was blown or bell rung. Had this been all, the authorities relied on by appellant might apply. But two witnesses, the plaintiff and Mrs. Borknick, who walked over the crossing from the Freeport Road to the station immediately ahead of the plaintiff, and both of whom were specially listening for a signal of the approach of the train, testified that none was given. We do not understand that the Supreme Court has ruled that the testimony of the railroad engineer and fireman that a whistle was blown or bell rung is conclusive in all cases. If it were so ruled, we know of few or none of the cases where a plaintiff was allowed to recover judgment against a railroad company, because of a collision at a public crossing, which could be sustained; for in practically all of them the train-men so testified. In the case of Haskins v. Penna. R. Co., 293 Pa. 537, relied on by appellant, the Supreme Court ruled that the plaintiff was guilty of contributory negligence,

which required a reversal, and then said, that in the circumstances there present, where the plaintiff's husband's automobile was struck and all the occupants but one killed, just as he was entering on the second track of a two-track crossing, and two or three seconds after he started to cross, at a point where he had a clear and unobstructed view of the track for 700 feet from where he was alleged to have stopped, that "the clear and positive declaration of the fireman and engineer of the locomotive may not be disregarded in favor of mere negative testimony." In the present case all the evidence was not merely negative. Two of the witnesses had very evident special reasons for listening for a signal, and their evidence cannot be disregarded either. In Weber v. P. & W. Va. Ry. Co., 300 Pa. 351, the Supreme Court said: "There was evidence, although contradicted, sufficient to take the question of defendant's negligence to the jury, that of persons in position to hear and whose attention was given to the matter that no signal was sounded of the train's approach;" and in Neuman v. Reading Co., 283 Pa. 416, where the plaintiff's witnesses testified that the train was running from 60 to 68 miles an hour and that no whistle was blown or bell rung as it approached the crossing, and this evidence was contradicted by the train crew, the engineer saying that he was running 53 miles an hour and that the usual warning by bell and whistle was given, the Supreme Court said: "the contradiction required the testimony to be submitted to the jury. The witnesses for the plaintiff were in a position to see and hear the approaching train, were looking and listening for it, consequently their testimony cannot be classed as merely negative in character." Mr. Justice FRAZER wrote the opinions in both the Neuman and Haskins cases, and he did not in the later case abrogate or overrule his opinion in the earlier one. The facts in the two cases were different. So the facts in the present case, though con-

tradicted, required the negligence of the defendant to be submitted to the jury.

(2) Defendant contends that plaintiff's contributory negligence was established by incontrovertible, physical facts and mathematical measurements; that his evidence and that of his witnesses cannot prevail against the measurements and calculations submitted by the defendant. We are familiar with the doctrine invoked by the defendant's counsel and have examined all of the cases cited by him as bringing this case within its purview. But that rule is not to be applied in a case of split seconds, involving a close calculation of time and space; it is enforced where the accident occurs so immediately after the plaintiff's entrance on the crossing that it is clearly physically impossible for the injured party to have stopped, looked and listened and not seen the nearby approaching train: Mensch v. Payne, 274 Pa. 356; Mills v. Penna. R. Co., 284 Pa. 605. This plaintiff, according to the evidence, stopped at the point where he should have done so,—just before he came to the first siding track of the defendant: Benner v. P. & R. Ry. Co., 262 Pa. 307, 311; Peoples v. Penna. R. Co., 251 Pa. 275. He and other witnesses say that until he got on the first track the view to the right (west) was interfered with by the rising ground and weeds, etc., so that only about 100 feet of the track was clearly visible to one stopping there. The testimony of Mr. Martoia, defendant's supervisor, that standing on the top of the rise, from the center of the east bound track, there was a clear view of 950 feet westward, and that standing between the two side tracks, there was a clear view westward of 965 feet, cannot be held to conclude the plaintiff in this case. His notes did not show what the clear view was from the point where one driving an automobile would stop, with its front wheels five feet from the first rail of the first siding. The clear view should have been taken from the point where the plaintiff

was obliged to stop, look and listen, not from points where he could not stop to look and listen without being held guilty of negligence; and in view of the bank on the right of the ascending grade to the crossing and the weeds growing on it, we cannot say that it made no substantial difference. The map or plan offered in evidence by the defendant extends only 720 feet west of the crossing. It shows only the beginning of the sharp curve to the south, which is apparent in the photographs. Besides, it is possible that Mr. Martoia was mistaken in his oral testimony; Mr. Montgomery was in his. The train was admittedly running 50 miles an hour, or $73\frac{1}{3}$ feet a second. In less than ten seconds it would cover the 720 feet shown by the documentary evidence, the plan. Plaintiff had to travel at least sixty feet from where he stopped to look and listen before his automobile would clear the east bound track and the overhang of the train—five feet to the first rail, forty feet between the rails, and fifteen feet for the length of the car and the overhang of the train. Traveling at four miles an hour he would go $5\frac{3}{4}$ feet in one second and 57 7/10 feet in ten seconds, or less than the distance he would have to go to clear the east bound track, while defendant's train traveled the 720 feet shown on the plan. In addition, plaintiff had to consume some of these valuable seconds in starting from a dead stop, and was delayed by the rough condition of the crossing and the foot passengers walking ahead of him. Defendant says its photograph, Exhibit F, shows that the crossing was not rough and uneven, which only goes to prove that photographs are not always conclusive; that much, even unintentionally, depends on the point of taking and method of exposure, for its photograph, Exhibit E, pictures a rough and uneven crossing. These calculations, especially when viewed in the light of the evidence of plaintiff's witnesses as to the rise or ascent from the Freeport Road to the main running tracks

and the obstruction to the view to the west do not establish the plaintiff's negligence so clearly as to permit the court to rule upon it as matter of law.

We think the facts bring it more clearly within the cases of Jester v. P. B. & W. R. Co., 267 Pa. 10; Mills v. Penna. R. Co., 284 Pa. 605; Shaffer v. Penna. R. Co., 258 Pa. 288; Thomas v. Penna. R. Co., 275 Pa. 579, and the like. There was in this case no intervening space between tracks where plaintiff could safely stop, look and listen again, as in Siegel v. N. Y. Central R. Co., 67 Pa. Superior Ct. 307.

We are of opinion that the negligence of the defendant and the contributory negligence of the plaintiff were both questions of fact for the jury and that their verdict should not be disturbed.

The assignment of error is overruled and the judgment affirmed.