Lamp *v.* Pennsylvania R. R., Appellant.

Argued October 2, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW,
JJ.

*Robert D. Dalzell,* of *Dalzell, Dalzell & McFall,* for appellant.—It is the contention of defendant that this case is clearly within the following decisions: Radziemenski v. R. R., 283 Pa. 182; Zotter v. R. R., 280 Pa. 14; Weber v. Ry., 300 Pa. 351; Massinger v. R. R., 300 Pa. 6; Miller v. R. R., 299 Pa. 63; Haskins v. R. R., 293 Pa. 537.

*C. J. Tannehill,* with him *Marshall & Marshall,* for appellee.—Plaintiff is entitled to the benefit of the presumption that her deceased husband exercised due care under the circumstances. It is for the jury to determine whether or not the testimony offered to rebut this presumption was sufficient to do so: Tomlinson v. Electric Co., 301 Pa. 72.

We respectfully invite the attention of the court to the following authorities: Statler v. R. R., 299 Pa. 321; Scalet v. Telephone Co., 291 Pa. 451; Peruzzi v. R. R., 99 Pa. Superior Ct. 519; Hugo v. R. R., 238 Pa. 594; Ely v. Ry., 158 Pa. 233; Mills v. R. R., 284 Pa. 605; Shaffer v. R. R., 258 Pa. 288; Neuman v. Reading Co., 283 Pa. 416; Nutt v. R. R., 281 Pa. 372; Waltosh v. R. R., 259 Pa. 372; Jester v. R. R., 267 Pa. 10.

Opinion by Mr. Justice Drew, November 23, 1931:

Plaintiff's husband, Conrad E. Lamp, was killed at a grade crossing in the Borough of West Elizabeth when an automobile he was driving was struck by one of defendant's trains. There was a verdict for plaintiff and judgment thereon. Defendant appeals, complaining of the lower court's refusal of binding instructions and judgment n. o. v.

There was sufficient evidence to carry the case to the jury on the question of defendant's negligence, and we have therefore to deal only with the alleged contributory negligence of plaintiff's husband.

The accident happened on April 18, 1928, at 10:45 A. M., at the Border Street crossing of defendant's

tracks. This street runs east and west, and the main tracks of the railroad run north and south at that place. At a point twenty-five feet south of the center of Border Street there is a switch leading from the northbound main track to a pull-out track, which is east of that main track and runs parallel with it a considerable distance. One hundred and forty feet south of the center of Border Street there is a switch on this pull-out track leading to a spur or team track, which runs for a short distance on the east side of the pull-out track. At the time of the accident there was standing on the pull-out track a string of coal cars and on the team track a cattle car.

The principal witness for the plaintiff was Albert J. Wise, decedent's brother-in-law, who was riding with him on the front seat of the automobile at the time of the accident. He testified that Lamp stopped the car about eight feet from the nearest track at a line marked in white paint on the pavement, the usual stopping place, and that then they looked and listened. He claimed that their view from that point, in the direction from which the train approached, was about four hundred feet, and that then there was no train in sight. He said a view for a greater distance was prevented by a station building and the cattle car on the team track and the coal cars on the pull-out track. He stated that Lamp changed gears and proceeded toward the tracks at a speed of about two or three miles an hour and that when the front wheels of the automobile had reached the first rail of the nearest track, he (Wise) saw the train for the first time, and that it was then about three hundred feet away. He warned Lamp, who tried to get across but failed, and the train struck the left rear corner of the automobile, just as it was leaving the track.

Wise claimed that the view south was not entirely free until the front wheels of the automobile reached the first rail, just where they were when he first saw the train. He said at that point he could see down the track as far as his eyes could carry. Since he was seated six

feet back from the front of the automobile, the meaning of his testimony is that at a point six feet back from the nearest rail, he had an unobstructed view south for a distance as far as his eyes could carry. However, he did not say that his view did not steadily increase as he approached the track from the place where the automobile stopped, eight feet back of where he stated he had an unobstructed view. He admitted that the train ran for about one hundred feet in plain sight before he saw it.

Another witness for plaintiff, Pyle, stated that it was not until he went up to the first rail and stood on it that he had a wholly unobstructed view down the track, and that then he could see for a half mile. Even this witness did not say that it was not possible to see for a long distance down the track from a point eight or ten feet back from the nearest rail.

The defendant offered in evidence a plan drawn to scale, by a qualified engineer, showing the physical conditions which were upon the ground at the time of the accident. This plan, the accuracy of which was not questioned, shows conclusively by mathematical demonstration, that if the cattle car was on the team track and the coal train on the pull-out track as testified by plaintiff's witnesses, and the station building located as shown on the plan, that they could not possibly obstruct the view from a point ten feet back on Border Street, or from any intermediate point between that and the nearest rail; and further, it shows beyond any doubt that the view south from these points was as far as the eye could reach. This plan also shows that the main tracks extend in an almost straight line and that a very slight curve to the right and close to Border Street improves the vision looking south for one approaching the crossing as Lamp did. There is not a word of testimony in the plaintiff's case to show that if decedent had looked for the train as he approached the track, he would not have had a constantly increasing view from the time he started his car, until he was six feet from the nearest

rail. Wise testified he had an unobstructed view from a point six feet from the rail, when the front wheels were entering the track. He did not deny that his view increased constantly, if he had looked, from fourteen feet from the rail—where he was sitting when the car stopped—until he was six feet from the rail—when the front wheels of the car started to cross. All that Wise stated was that it was not until the car entered the track—when he was six feet back—that "he saw clear down as far as his eyes could reach."

That the view did steadily increase there is no doubt, and if decedent had been looking, and had seen what he was bound to see, he would have observed the train when it was a long distance away and when he had plenty of time to stop his car, free of the track, and avoid this accident.

In the present case, the testimony of plaintiff's witnesses contradictory of infallible physical facts cannot be accepted. As was stated in the opinion of this court by Mr. Justice WALLING, in Lessig v. Reading Transit & Light Co., 270 Pa. 299, 302: "As a general rule a suitor is entitled to have his case submitted to the jury on his own interested testimony although contradicted by disinterested witnesses, the remedy for a perverse verdict being a new trial; where, however, as here, the party's own testimony stands not only opposed to that of several disinterested witnesses, but is shown to be untrue by incontrovertible physical facts, the case is different. It is vain for a man to say his auto was struck in the back when the only injury thereto is at the side near the front wheel, or to insist the collision was at one place when the broken glass and other unmistakable evidences thereof are at another. A court cannot accept as true that which the indisputable evidence demonstrates is false."

The case in hand is ruled in all essential matters by that of Radziemenski v. Baltimore & Ohio R. R. Co., 283 Pa. 182, where, in the opinion of this court by the present Chief Justice, we said: "While there was evidence

to the effect that vision was obstructed to a slight extent, both by the watchman's box and by a line of telegraph poles, a map offered in evidence, surveyed by a competent engineer, and drawn to scale, the accuracy of which was not questioned, shows these witnesses were mistaken and that the nearest telegraph pole was in fact on the opposite side of the railroad tracks and 600 feet away and the watchman's house, owing to its location along the curb of the street, could not have obstructed the view of decedent from the place it is claimed he stopped to look and listen. Even assuming decedent did, in fact, stop at a greater distance from the track, any obstruction by reason of the house would have disappeared as he approached and before he reached the first rail. While it is not the province of this court to decide disputed questions of fact, and we are bound to give plaintiff the benefit of all favorable inferences which may be drawn from the testimony of his witnesses, yet we are not required to believe what physical facts demonstrate to be untrue, and when an infallible mathematical test is applied to the testimony of a witness and he is found to be mistaken in a material matter, it would be a travesty on justice to allow the jury to believe such testimony and permit them to render a verdict based thereon: Lessig v. Reading Transit Co., 270 Pa. 299."

It is now the established law of this State that where the testimony of a witness is contradicted by incontrovertible physical facts, the testimony of such witness cannot be accepted, it being either mistaken or false, and a verdict based on it will not be sustained: Grimes v. P. R. R. Co., 289 Pa. 320; Hartig v. American Ice Co., 290 Pa. 21; Folger v. Pittsburgh Rys. Co., 291 Pa. 205; Miller v. P. R. R. Co., 299 Pa. 63. "Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible": Lessig v. Reading Transit & Light Co., supra; Seiwell v. Hines, Dir. Gen., 273 Pa. 259; Maue v. Pittsburgh Rys. Co., 284 Pa. 599.

Lamp was killed, and there arose the presumption that he used due care under the circumstances. Though this presumption is rebuttable, it is still a question for the jury to determine this fact, even though the evidence to the contrary is uncontradicted, when it depends solely on the oral testimony of witnesses, for it is essential that their credibility be passed upon: Schmidt v. P. & R. Ry. Co., 244 Pa. 205. If, however, there be, in addition to oral testimony, indisputable physical conditions, indicated by actual measurements, maps and photographs, the existence of a fact ordinarily presumed is negatived: Cubitt v. N. Y. C. R. R. Co., 278 Pa. 366; Grimes v. P. R. R. Co., supra.

"The doctrine that a person losing his life must be presumed to have exercised due care has no application where the evidence shows affirmatively the circumstances of the accident to the contrary": Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14, 21. Where the uncontradicted, external facts show deceased could not have performed his legal duty the question is not one for the jury (Hazlett v. Dir. Gen., 274 Pa. 433), and mathematical tests may be resorted to in determining the true situation: Radziemenski v. Baltimore & Ohio R. R. Co., supra. The presumption goes down before incontrovertible physical facts which prove that decedent did not perform his full duty before attempting to cross the track: Weber v. Pbg. & W. Va. Ry., 300 Pa. 351; Hartig v. American Ice Co., supra, and cases there cited.

We have very carefully examined this entire record, and in doing so have given the plaintiff the benefit of every favorable inference we could draw from the testimony of her witnesses. However, it is clear her husband was negligent and that his own failure to exercise ordinary care and watchfulness was the cause of this unfortunate accident. Under these circumstances a recovery is impossible.

The judgment is reversed and here entered for defendant non obstante veredicto.