## LOBDELL–EMERY MFG. CO. v. WILENCHIK.

### No. 7823.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 3, 1941.

Decided Dec. 18, 1941.

Rehearing Denied Feb. 10, 1942.

David H. H. Felix, of Philadelphia, Pa. (Felix & Felix, of Philadelphia, Pa., on the brief), for appellant.

Ward C. Henry, of Philadelphia, Pa. (Herbert A. Barton and Swartz, Campbell & Henry, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff brought an action in the nature of trover to recover the value of metal alleged to have been converted by the defendant. The jury made special findings that the defendant had converted 15,270 pounds of nickel anodes and 606 pounds of monel hooks and that this metal belonged to the plaintiff and found a verdict for the plaintiff. The court refused motions for judgment for the defendant n. o. v. and for a new trial and entered judgment on the verdict.

The defendant contends that the finding that the nickel anodes belonged to the plaintiff was made by the jury in defiance of incontrovertible physical facts and infallible mathematical tests and calculations and that the cause should for that reason be remanded for a new trial. A brief resumé of the evidence is essential in order to understand the defendant's argument.

The defendant admits that he purchased 15,270 pounds of nickel anodes from one Burdt, an employee of the plaintiff, in 53 shipments from December 23, 1937 to February 15, 1940. The plaintiff concedes that the defendant paid Burdt the market price for scrap metal by check in the usual course of business. In March, 1940, Burdt was arrested for the theft of metal from the plaintiff and was convicted. Both before and after he served his sentence Burdt testified that all the metal which he sold to the defendant was stolen by him from the plaintiff's plant. Another witness testified that all the nickel anodes in the plaintiff's plant were the property of the plaintiff. This was the plaintiff's evidence as to ownership.

The defendant elicited the following testimony from the plaintiff's witnesses: From December 31, 1937, to December 31, 1939, the plaintiff either consumed in its business or suffered the loss of 42,203 pounds of nickel. In 1938 and 1939 it plated 3,249 bicycle saddles and 94,166 seat posts. In those years it sold 1,081,254 bicycle rims. The average bicycle rim has a diameter of 25 inches and is from $1\frac{1}{2}$ inches to $2\frac{1}{8}$ inches in width. The plating on the outside of the bicycle rim runs from five ten-thousandths (.0005) of an inch to seven ten-thousandths (.0007) of an inch in thickness and is twenty-five one hundred-thousandths (.00025) of an inch thick on the inside of the rim. From these figures an expert called by the defendant calculated that in plating the bicycle rims alone the plaintiff

consumed at least 40,260 pounds of nickel, that even if no allowance is made for the amount of nickel consumed in plating the complete saddles and the seat posts the maximum amount of nickel that could have been stolen from the plaintiff was 1,943 pounds and that it must follow that the 15,270 pounds of nickel purchased by the defendant could not conceivably have been the property of the plaintiff.

The defendant's conclusions may form the basis for setting aside the jury's verdict if and only if each of the figures used by him in his calculations are accurate and beyond dispute. For if either the minuend of 42,203 pounds is increased or the subtrahend of 40,260 pounds is decreased the remainder must necessarily be increased. It is important, therefore, to see how the defendant arrives at those figures. He arrives at the figure of 42,203 pounds of nickel by examining the plaintiff's inventories and purchases, which show:

| | |
|---|---|
| Inventory, nickel, December 31, 1937 | 11,785 lbs. |
| Purchase of nickel during 1938 | 21,341 lbs. |
| Purchases of nickel during 1939 | 19,419 lbs. |
| Total | 52,545 lbs. |
| Less inventory, December 31, 1939 | 10,342 lbs. |
| Total amount of nickel consumed | 42,203 lbs. |

The computation covers the period from December 31, 1937, to December 31, 1939. The shipments to the defendant, on the other hand, run from December 23, 1937, to February 15, 1940. How many nickel anodes Burdt had stolen prior to the taking of the inventory on December 31, 1937, and how many after the taking of the inventory on December 31, 1939 does not appear in the testimony.[1] Although the evidence supports the proposition that the plaintiff could not have had more than 42,203 pounds of nickel available for consumption between December 31, 1937, and December 31, 1939, it may have had and probably did have more than that number of pounds available during the period for which Burdt confessed to the taking of the nickel anodes from the plaintiff's plant. It is quite conceivable that the jury refused to accept the plaintiff's figure of 42,203 pounds because it believed that Burdt stole some of the nickel both before and after the inventory dates relied on by the plaintiff.

The subtrahend figure of 40,260 pounds relied upon by the defendant is also not indisputable. The defendant reached that figure by proving to his own satisfaction that it would take at least that much nickel to plate 1,081,254 bicycle rims. It must be borne in mind, however, that although that many bicycle rims were sold in 1938 and 1939 there was no evidence as to how many of the bicycle rims sold were nickel plated in 1938 and 1939. The evidence does not negative the possibility that some of the bicycle rims sold in 1938 and 1939 were nickel plated prior to those years. If such were the case the nickel used in plating these rims could not be reflected in the figures given to the jury. If all the rims were nickel plated prior to December, 1937, the subtrahend of 40,260 pounds would disappear entirely. The validity of the figure is also affected by another factor. If the thickness of nickel plating upon the bicycle rims varied from that relied upon by the defendant the calculations of the defendant's expert would lose their basis of fact. That this may well be the case was indicated by the witness who testified as to the thickness of plating when he qualified his testimony by such expressions as "about" and "probably." We are thus brought into a realm of speculation far afield from the precision and accuracy of an arithmetical computation.

Little benefit can be derived from a discussion of the cases relied upon by the defendant.[2] He urges that these cases hold

[1] According to the plaintiff's complaint the first shipment was made before December 31, 1937, and contained 291 pounds of nickel anodes and the last three shipments were made after December 31, 1939 and contained 298 pounds of nickel anodes, 203 pounds of nickel anodes and 228 pounds of nickel anodes, respectively, a total of 1,020 pounds.

[2] To cite but a few, Lessig v. Reading Transit & Light Co., 270 Pa. 299, 113 A. 381; Horen v. Davis, 274 Pa. 244, 118 A. 22; Radziemenski v. Baltimore & O. R. R. Co., 283 Pa. 182, 128 A. 735; Grimes v. Pennsylvania R. R. Co., 289 Pa. 320, 137 A. 451; Hartig v. American Ice Co., 290 Pa. 21, 137 A. 867; Lamp v. Pennsylvania R. R. Co., 305 Pa. 520, 158 A. 269, 84 A.L.R. 1217; Bernardi v. Pennsylvania R. R. Co., 328 Pa. 373, 195 A. 38.

that a court is not required to believe that which physical laws demonstrate to be untrue and that when an infallible mathematical test applied to testimony proves the witness was either mistaken or lying on a material matter the jury should not be permitted to believe such testimony and find a verdict thereon. Sound as such a principle may be it has no application to the facts in the present case, which are not sufficiently definite and incontrovertible to establish a basis for controlling mathematical tests as to the veracity of a witness.

The judgment of the district court is affirmed.