**BROWN et al. v. DORNEY PARK COASTER CO., Inc.**

No. 9480.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 18, 1947.

Decided March 17, 1948.

O'CONNELL, Circuit Judge, dissenting.

———◆———

Laurence H. Eldredge, of Philadelphia, Pa. (Reabuck & Villa, of Allentown, Pa., and Martin H. Philip, of Slatington, Pa., on the brief), for appellants.

T. R. White, Jr., of Philadelphia, Pa. (White & Williams, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH and O'CONNELL, Circuit Judges.

BIGGS, Circuit Judge.

Jurisdiction in the instant case is based on diversity. The law of Pennsylvania governs. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487. See also Kehoe v. Central Park Amusement Co., 3 Cir., 52 F.2d 916, 917. The plaintiffs are husband and wife. The wife sued for damages for personal injuries; the husband, to recover for loss of his wife's services and society. The plaintiffs alleged that the wife-plaintiff was injured because of a defective table top. We think that clarity will be more readily achieved in this opinion if we give a rather complete factual background of the defendant's operations before dealing with the assertions of the parties as to how or why the accident occurred. The jury rendered a verdict for the plaintiffs in the amount of $2,000 and judgment was entered in accordance with the verdict. The court below set aside the verdict and entered judgment n. o. v. for the defendant. The plaintiffs appealed.

The defendant maintains an amusement park. Wooden tables and benches for picnics are furnished by it without charge to its patrons. Plans of tables used by the defendant at its park and a photograph of what was deemed to be a typical table were introduced in evidence. A table, not the one at which Mrs. Brown, the wife-plaintiff, sat, but one similar to the picnic table used by the Browns (a certain atypical feature to be dealt with immediately hereinafter aside), was brought into our court room and into the court below, and was used for demonstrations as to how the accident occurred. The top of the table consists of

three planks of either long leaf yellow pine or white pine. It appears from the plans, from the photograph and from the table itself that each of the three planks is 7'11" long and 11½" wide. There is a dispute as to the thickness and weight of the plank which was nearest to Mrs. Brown. This is the atypical feature. The plans, however, show each plank as possessing a thickness of 1⅜". They are nailed to the tops of two horses at a point 14¾" from each end of the plank. The tops of each horse on which the planks forming the table top rest are shown in the plans as 3½" in width. Cross-pieces extend out on each side of the horses and are nailed to them. To the top of each cross-piece is bolted a 1¾" plank, 7¾" wide, which forms a bench. The top of each bench is 1'10⅛" from the ground. The defendant's chief carpenter stated that the planks comprising the tops of tables like the one in court were either 1⅜" or 1¼" in thickness. A lumberman, Kohn, an expert in woods, produced by the plaintiff testified that the weight of one of the planks comprising the top of the table brought into court weighed approximately thirty-five pounds. This plank was of long leaf yellow pine. The witness said that if the plank of the table at which Mrs. Brown was seated was of white pine, it would be six to eight pounds lighter. He stated also that "occasionally" rottenness in wood could be determined by merely looking at it, a fact which is known to all; that rottenness in wood always could be detected by probing with a probing instrument. He stated also that the outside plank of the three planks comprising the top of the table in court were made of long leaf yellow pine which would rot under the conditions which existed at the amusement park (to be described hereinafter) within five to eight years; that the tops of the horses were made of West Coast Douglas fir which at the point of contact with other wood would rot "within three years one-eighth inch in". Mr. Brown testified that the plank of the table top which had been instrumental in causing his wife's injury seemed "much lighter" than the plank which the lumberman estimated as weighing thirty-five pounds. He testified also that that plank of the table top, nearest to his wife, had pulled out of the top of the horse farthest away from her despite the fact it had been nailed to the horse, and that the wood at the top of the horse "looked rotten".

Since a picnic table is not inherently a dangerous object the plaintiffs undertook to show, as part of their case in chief, that the defendant's inspection of the tables was so limited as to be legally insufficient. They endeavored to do this by producing employees of the defendant. The following appeared in the course of the testimony on this point.

There were in the park about five hundred picnic tables of the sort brought into court. Some were perhaps fifteen years old. During the winter months the tables were stored in shelters which had roofs but had no sides. In the spring the tables were distributed about the park. The defendant employed two carpenters to take care of its equipment. The head carpenter inspected the tables nearly every week. When he was not available the other carpenter made inspections. The inspections consisted of walking around the tables and looking them over. If a carpenter saw one that did not "look right" he examined it further. A carpenter, employing a hammer for that purpose, tapped or sounded any board which seemed to have weakened. On occasion he put a knee on the seats and pressed to see if the wood was sound. He sometimes followed this procedure with the planks of the table tops. Laborers were employed to clean off the tables and these men were required to report to the defendant's office anything which appeared to them to be out of condition about the tables. If a table had rotted it was supposed to be scrapped or rebuilt. The inspecting carpenter did not tap every piece of wood in all the tables; nor did he take hold of the planks which form the table tops and attempt to pull them up. When the tables were taken out of the shelter to be placed about the park, the laborers who carried them picked them up by the ends of the top boards, a procedure which, it was testified, would disclose loose boards in most instances.

According to her story Mrs. Brown was seated at one of the tables close to the horse nearest to her and to the right of it. Her sister was seated immediately to her right. A picnic lunch had come to an end.

Mrs. Brown, who weighed one hundred seventy-five to one hundred eighty pounds, stated that she started to get up from the table, turned and swung her feet to the left so as not to touch her sister; that she then put her right hand on the table and pressed down as an aid in lifting her body up. The plank on which she pressed was nailed, as has been indicated, to both horses. She stated that it went down under her weight at the end nearest to her, the other end rising in the air, the top of the nearest horse serving as a fulcrum. Mrs. Brown illustrated in court to some degree what she said had occurred and in her demonstration she put her right hand at a point approximately 10″ from the end of the plank on the table in court. She also indicated that her left thigh was about 8″ from the horse. Her sister testified that the plank flew up in the air. Mrs. Brown fell and broke her right leg. The husband-plaintiff did not see the accident. Both plaintiffs testified that the picnic table "looked perfectly all right" when the Brown party sat down at it.

The defendant has raised three points, two of which require discussion. In view of our decision it will be unnecessary to discuss the third defense raised by the defendant. This deals with the verdict of the jury and the judge's charge in relation thereto. We will discuss the defendant's second point first.

The defendant contends that the "incontrovertible physical facts rule" of Pennsylvania as exemplified by such decisions as Lamp v. Pennsylvania R. Co., 305 Pa. 520, 525, 158 A. 269, 271, 84 A.L.R. 1217, and the authorities therein cited, requires a decision in its favor. It must be borne in mind that under the incontrovertible physical facts rule and also because the jury rendered a verdict in favor of the plaintiffs every inference of which the evidence is fairly susceptible must be taken in favor of the plaintiffs. So viewing the evidence and applying the familiar formula for lever on fulcrum it will be found that Mrs. Brown could not have moved the plank if it weighed 35 pounds unless she had weighed approximately 241 pounds. But putting her full weight on it, as conceivably she could have done, she could have moved the plank out of position if it had weighed 26 pounds or less. We have set out in the footnote the calculations whereby these conclusions are arrived at.* Taking the inferences from the evidence most favor-

---

\* As follows:

Mrs. Brown's weight is estimated for the purposes of the calculation at 180 pounds.

$7'-11'' = 95''$     Unit wt. $= \dfrac{35\#}{95}$ per inch of length

Uniformly distributed loads act at center of gravity of section or at ½ distance from fulcrum point

Weight of plank to right of horse $= \dfrac{35}{95} \times 80.25 = 29.5\#$

downward moment to right due to plank $= 29.5\# \times \dfrac{80.25}{2} = 1183.7'' \#$

weight of plank to left of horse $= \dfrac{35}{95} \times 14.75 = 5.5\#$

downward moment to left due to plank $5.5\# \times \dfrac{14.75}{2} = 40.5'' \#$

$1183.7 - 40.5 = 1143.2'' \#$ must be applied to balance
at point 4.75″ to left the force required to just offset weight to right $=$
$4.75(x) = 1143.2'' \#$
or $x = 240.7\#$

able to the plaintiffs, it is easily possible to arrive at a determination that the loose plank weighed 26 pounds or less. It follows, therefore, that the incontrovertible physical facts rule of Pennsylvania cannot be applied to obviate the defendant's liability for though it is most probable that the accident did not happen as Mrs. Brown asserts, nonetheless there is the possibility that it did occur in the manner described by her. As we apprehend the Pennsylvania incontrovertible physical facts rule the court below, in order to apply it, would have had to have been in a position to state that the accident could not possibly have occurred in the manner testified to by the wife-plaintiff.

■■ As to the first defense raised by the defendant we are of the opinion that the plaintiffs have not met the test required by the law of Pennsylvania by showing that the defendant could have discovered the loose state of the offending plank by the exercise of the degree of care required of it under the circumstances. The possessor of land is liable to invitees " * * * if, but only if, he knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them * * * ". Restatement, Torts, § 343; Vetter v. Great A. & P. Tea Co., 322 Pa. 449, 185 A. 613. In Hunter v. Hotel Sylvania Co., 153 Pa.Super. 591, 34 A.2d 816, a guest was injured when he cut his hand on a cracked porcelain shower bath handle. Recovery was denied on the ground that the injury was due to a latent and unsuspected cause. There is an analogy in the facts of the Hunter case to those of the suit at bar. See also Bechtel v. Franklin Trust Co., 120 Pa.Super. 587, 182 A. 800, in which injury occurred from plaster falling from the ceiling in a bank vault; Kline v. Kratchman, 87 Pa.Super. 463, injury caused by a splinter in bathing equipment; and Smith v. Hartman, 79 Pa.Super. 126, injury from collapse of shelves in a store. Cf. the circumstances set out by Mr. Justice Jones in Oberheim et vir v. Pennsylvania Sports and Enterprises, Inc., 358 Pa. 62, 55 A.2d 766.

■ The court below stated in its opinion: "If the many statements of the Pennsylvania Courts, to the effect that care required is commensurate with the risk, mean anything, they must mean that the owner's duty as to such equipment can be met by a less elaborate and thorough-going system of inspection than in the case of appliances which, if defective, involve substantial risk of injury, or which are in themselves dangerous." It is difficult to conceive of any article in an amusement park less likely to cause injury than a loose board in the top of a picnic table such as that in the case at bar. We conclude that under the evidence offered by the plaintiffs themselves the defendant has met the test of reasonable inspection under the circumstances. We agree with the court below that the defendant should not be held liable.

The judgment will be affirmed.

Assuming a person 180# applied total weight at point, what weight must plank be to just balance —

weight of plank = x

$$\frac{x}{95} \times 80.25 \times \frac{80.25}{2} = \frac{x}{95} \times 14.75 \times \frac{14.75}{2} + 180(4.75)$$

$$33.9x = 1.14x + 855$$
$$32.76x = 855$$
$$x = 26\#$$

As pointed out the calculation finds that Mrs. Brown must have weighed 240.7 pounds to balance a 35 pound plank. Of course the weight applied would necessarily be somewhat more than that in order to unbalance the plank in the first instance and then accelerate the imbalance and bring the right hand portion upward. See the drawing at the top of the note. While a 180 pound person by applying his direct weight to the plank at the point indicated in the drawing could just balance it, the plank necessarily would have to be somewhat lighter in order to unbalance it in the first instance and cause its right hand portion to move upward. It should be noted that Mr. Kohn testified that an ordinary white pine plank would weigh 6 to 8 pounds less than a 35 pound long leaf yellow pine plank. Mr. Brown testified that the plank which caused his wife's injuries was "much lighter" than the plank comprising part of the top of the table produced in court.

438

O'CONNELL, Circuit Judge (dissenting).

I agree with the majority of this court that the Pennsylvania incontrovertible facts rule does not bar recovery in the case sub judice. Likewise, I agree that in Pennsylvania a park owner is not an insurer of the safety of his invitees. I believe, however, that the facts as found by the jury at the trial of the instant case neither require nor warrant the conclusion that, as a matter of law, the defendant herein met the test of reasonable inspection under the circumstances. I should like to analyze the cases on which my brethren rely in reaching the result set forth in their majority opinion.

Vetter v. Great A. & P. Co., 1936, 322 Pa. 449, 185 A. 613, while containing a dictum to the effect that a grocery store is not an insurer of the safety of its invitees, nonetheless affirms a judgment entered in favor of a rubbish remover who slipped and fell down the cellar steps of the store. The Supreme Court of Pennsylvania in that case specifically held that "It was for the jury to decide whether appellant and its employees had notice of the condition of the cellar steps prior to the time of the accident." 185 A. at page 615. If we apply that statement to the case at bar, was it not for the jury to decide whether Dorney Park Coaster Co. had notice, or should have had notice, of the condition of the picnic table?

Hunter v. Hotel Sylvania Co., 1943, 153 Pa.Super. 591, 34 A.2d 816, did deny recovery to a hotel guest who was injured when a porcelain shower bath handle cracked. It is significant to me, however, that the court stressed that "There are no circumstances from which negligence may have been inferred by the jury, and defendant was not called upon to show that it exercised due care to prevent the harm." 34 A.2d at page 817. Manifestly, the Hunter case must have involved a very different situation from that here presented, if the hotel was not required to show the exercise of due care; for in the case at bar plaintiff as well as defendant adduced considerable testimony concerning not only the type of inspection which the park made, but also what types of inspection could reasonably have been made which might have discovered the defect in the table. The facts of the Hunter case, as set out in the opinion, bear out my conclusion. Without untoward incident, the hotel guest had used the same shower on several previous nights. "If defendant had inspected the fixture this would not have led to the discovery of any defect that resulted in plaintiff's injury." 34 A. 2d at page 817. Reduced to its elements, the Hunter case seems to me to hold that the hotel guest could not claim recovery under the doctrine of res ipsa loquitur, a principle inapposite to the instant case, in that plaintiff here did show affirmatively, to the satisfaction of the jury, that the park had not met its duty of inspection. Furthermore, it should be noted that the Hunter court recognized the validity of the heretofore unchallenged principle, which I deem controlling in the case at bar, that "Where the thing which causes the injury is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. [Citing cases.]" 34 A.2d at page 818.

That Bechtel v. Franklin Trust Co., 1936, 120 Pa.Super. 587, 182 A. 800, the falling plaster case, as well as Smith v. Hartman, 1922, 79 Pa.Super. 126, likewise turn upon the doctrine that negligence must be affirmatively proved, is indicated by the statement in Annett v. American Stores Co., 1939, 333 Pa. 589, 5 A.2d 97, citing these two cases for "the principle that where the evidence is not sufficient to sustain the conclusion that the defendant placed the object, which inflicted the injury, in the position of peril, mere proof of the happening of the accident will not carry the case to the jury, or support a charge of negligence." 5 A.2d at page 98; emphasis supplied. Moreover, the Bechtel case was limited still further; for the court said [120 Pa.Super. 587, 187 A. 801], " * * * nor do the facts warrant us in holding the rule applicable to be the duty assumed by owners of public exhibitions or entertainments to which the public resort in large

numbers, such as a theater, circus, ball game, or park. [Citing cases.]" [1]

Kline v. Kratchman, 1926, 87 Pa.Super. 463, also involved an accident in which the injured party "offered no evidence whatever as to the condition of the bench either before or after the alleged accident * * *. The plaintiff does not seem to have made any examination of the bench, which he might have done then and there, to ascertain whether it had been improperly constructed or that defects had developed therein which required repair." 87 Pa.Super. at page 465.

The foregoing analysis impels the conclusion on my part that the cases on which the majority of this court bases decision, while undoubtedly correct expositions of Pennsylvania law, should have no bearing upon the case which we must decide. None of those cases either involve or question the higher degree of responsibility which the operator of an amusement park must meet; none pose the situation where the injured party has gone forward affirmatively to show more than the mere happening of an accident; and none challenge even indirectly the principle that accidents themselves afford evidence of the want of due care, if they would not have happened in the ordinary course of things, had proper care been exercised by "those who have the management."

I can see no reason why the principle last enunciated is not applicable in the instant case. The employee of defendant whose duty it was to inspect the tables, when asked what he did in his inspections, replied, "Why, walk through [the park] and look over the tables. Whenever you see one that doesn't look right, examine it." In view of the jury verdict favorable to plaintiff, can it be said as a matter of law that an inspection largely visual, which the jury obviously deemed inadequate, and which certainly seems to have overlooked the picnic table not produced in evidence,[2] satisfies the duty of care which Pennsylvania places upon owners of amusement enterprises?

Much closer to the case at bar, in my opinion, are such cases as Durning v. Hyman, 1926, 286 Pa. 376, 133 A. 568, 53 A.L.R. 851, and Hardy v. Phila. Nat. League Club, 1930, 99 Pa.Super. 326. In the Durning case, the court, specifically pointing out that the res ipsa loquitur rule did not permit recovery when a seat in a moving picture theater broke, neverthless said that the jury was permitted to draw an inference of a lack of due care, and that "but slight evidence is sufficient to meet the burden of proof placed on the person injured." 133 A. at page 569. In the Hardy case, which arose out of the subsiding of a bleacher stand at a baseball game, the court said that the jury was bound to determine the weight of testimony which was offered to prove the exercise of due care. Like the case at bar, the plaintiff in the Hardy case introduced evidence tending to show the reason for the falling of the stand. The Durning and Hardy cases, like that sub judice, treat of the responsibility of the owner of an amusement enterprise, indicate what burden of proof lies with the injured patron, and reaffirm the doctrine that liability predicated upon lack of due care by the manager of the defective instrumentality is a jury question. On the basis of these cases, I cannot justify the granting of a judgment n. o. v. by the court below.

For the reasons stated, I believe that the judgment of the district court should be reversed.

---

[1] The general manager of Dorney Park here testified that, in a normal summer season, approximately one-half million people visited the park.

[2] The picnic table in question was not produced in court by defendant, although the general manager of defendant was at the scene of the accident immediately after plaintiff fell, and although he watched an ambulance take her away.