J-A11039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY CHARLES SCAMACK | : | |
| | : | |
| Appellant | : | No. 1004 MDA 2017 |

Appeal from the Judgment of Sentence June 13, 2017
in the Court of Common Pleas of Adams County
Criminal Division at No.:  CP-01-CR-0001024-2016

BEFORE:   STABILE, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 18, 2018**

Appellant, Anthony Charles Scamack, appeals from the judgment of sentence imposed following his jury conviction of endangering the welfare of a child (EWOC),[1] and his summary conviction, by the trial court, of harassment.[2]  Specifically, he put out a cigarette on the cheek of his girlfriend's seven-year-old daughter.  Appellant chiefly challenges the sufficiency, the weight, and the exclusion of certain evidence.  We affirm.

We derive the facts of the case from the trial court's Rule 1925(a) opinion, filed July 14, 2017, its opinion and order denying Appellant's post-

_____

[1] 18 Pa.C.S.A. § 4304.

[2] 18 Pa.C.S.A. § 2709.

_____

*   Retired Senior Judge assigned to the Superior Court.

verdict motions, filed April 27, 2017, and our independent review of the record.

Appellant's convictions stem from the report by M.M.R., (the Victim), then age seven, that he burned her left cheek with a cigarette. No one else was present to witness the incident. At the time, the Victim's mother was living with Appellant, her boyfriend, and eight of his relatives in the home of his parents. The Victim alternated multi-day visits with both parents. The Victim would stay over when her Mother had custody. Mother and Father were actively disputing custody.

When the Victim returned to her Father two days later, he noticed the burn on her cheek. Father reported that the Victim told him that "Tony" (Appellant) did it, on purpose. Father took his daughter to an emergency room when he could not get an immediate appointment with her pediatrician. Dr. Elizabeth Wiest, the emergency room doctor, treated the victim and notified the police.

Appellant denied everything, as did the rest of his household, including the Victim's own Mother, who claimed to have bathed the Victim on the night in question and not to have noticed anything unusual.

Appellant hypothesized that the Victim may have received her wound from a fall onto a circular object at a playground, or an insect bite. Appellant also claimed that Father made the incident up to gain advantage in a contentious custody dispute over the Victim (and her older sister).

At trial, Appellant sought to introduce evidence that the custody battle was extremely hostile.[3] The trial court permitted one mention of a contentious ongoing custody dispute, but prohibited further reference.

The jury convicted Appellant of EWOC, but acquitted him of simple assault. The trial court found Appellant guilty of the summary offense of harassment. On June 13, 2017, the trial court sentenced Appellant to placement in the intermediate punishment program for thirty-six months with six months in restrictive intermediate punishment and the remainder of the sentence to be served on restorative sanctions. (**See** Trial Court Opinion, 7/14/17, at 2.). This timely appeal followed the trial court's denial of Appellant's post-verdict motion for a directed verdict or a new trial, on April 27, 2017.[4] (**See** Order, 4/27/17; **see also** Opinion on Post-Verdict Motion for Directed Verdict, 4/27/17).

Appellant presents seven questions for our review:

1. [Did] the [t]rial [c]ourt commit[ ] an error of law or abuse[ ] its discretion in refusing to permit defense counsel to fully present the extremely hostile nature of the on-going custody dispute between the Father of the alleged victim, who initially

---

[3] Procedurally, defense counsel filed a motion *in limine*, which the trial court denied, except for the one restricted reference.

[4] Appellant filed a court-ordered statement of errors on July 11, 2017. **See** Pa.R.A.P. 1925(b). For the benefit of counsel, we note that the brief should have included a copy of the statement of errors. **See** Pa.R.A.P 2111(a)(11), (d). The brief should also have included a copy of the trial court's Rule 1925(a) opinion. **See** Pa.R.A.P. 2111(b). Counsel has also failed to certify compliance with the word count limit. **See** Pa.R.A.P. 2135(a)(1).

reported the alleged incident, and [Appellant's] paramour (the victim's mother) as motive in defense of the alleged charge[?]

2. [Was there] insufficient evidence to prove beyond a reasonable doubt that the alleged injury was, in fact, a cigarette burn[?]

3. [Was there] insufficient evidence to prove that [Appellant] is a "person supervising the welfare of a child"[?]

4. [Was there] insufficient evidence that [Appellant] endangered the welfare of a child by "violating a duty of care, protection or support"[?]

5. [Did the trial court commit] an error of law or abuse[ ] its discretion in failing to sustain [Appellant's] argument that incontrovertible facts so contradicted the testimony of the only witness making the allegation, that her testimony could not be accepted as it was either mistaken or false and the verdict based on it should not be sustained[?]

6. [Was the] verdict . . . against the weight of the evidence[?]

7. [Was there] insufficient evidence to find [Appellant] guilty of harassment as there was no evidence that [Appellant] intended to harass, annoy or alarm the victim[?]

(Appellant's Brief, at 5-6).

Appellant's first claim challenges an evidentiary ruling. Our standard of review for a trial court's decision whether to admit or exclude evidence is well-settled:

The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

- 4 -

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015), *cert. denied*, 137 S. Ct. 89 (2016) (citations and internal quotation marks omitted).

Preliminarily, on this first issue, Appellant fails to develop an argument for his claim supported by pertinent discussion and citation to authorities. (*See* Appellant's Brief, at 22-27); *see also* Pa.R.A.P. 2119(a), (b).

To the contrary, Appellant merely recites general facts of the case and posits that the trial court's exclusion of evidence detailing the contentious nature of the custody dispute (and an interview of the judge who presided over the custody dispute), prejudiced him by preventing presentation of a motive for Father to fabricate a story to obtain custody. Notably, Appellant presents no authority whatsoever in support of his claim. (*See* Appellant's Brief, at 22-27). Accordingly, his issue is waived. *See* Pa.R.A.P. 2101, 2119(a), (b).

Moreover, it would not merit relief. Appellant fails to establish that Father **did** manufacture any evidence. At most, he surmises that Father **might** have had a motive to fabricate. Appellant's bald assertion of a motive, without more, amounts to nothing but speculation and conjecture. The trial court acted well within its discretion in excluding any such evidence, where the potential for undue prejudice outweighed any possible probative value.

Finally, we note in general that Appellant repeatedly asserts throughout the brief, including this first issue, that the Victim did not implicate him in burning her, or denied it outright. (*See, e.g.*, Appellant's Brief, at 26) ("The

- 5 -

child failed to make any statement about the Defendant doing anything to her.").

The record confirms that the Victim was sometimes reluctant to talk about the incident with law enforcement, counselors, etc. However, declarations that the Victim "failed to make any statement about the Defendant doing anything to her" are overblown, inaccurate, misleading, and highly disingenuous. (*Id.*).

On repeated occasions, the Victim unequivocally named Appellant as the person who deliberately burned her cheek with his cigarette. (*See, e.g.,* Trial Ct. Op., 7/14/17, at 1-2) (trial court re-counting Victim's report on March 7, 2016 to Pennsylvania State Trooper Kyler Hull that her mother's boyfriend had put cigarette out on her face; trial court relating that on April 28, 2016 Victim told Pennsylvania State Trooper Scott Masci and Corporal Dawn Smith that Appellant burnt her face with his cigarette, on purpose). At trial, the Victim testified that Appellant burned her with a cigarette on the left side of her face. (*See* N.T. Trial, 4/06/17, at 39). The Victim testified consistently on cross-examination. (*See id.* at 48-65).

In any event, importantly, the Victim further testified that her **Mother told her to say** that Appellant did **not** burn her with a cigarette. (*See id.* at 47, 61). Appellant is also reported as having ordered the Victim not to talk to anyone. Having ordered the Victim to say nothing, he cannot now argue that the Victim was reluctant to identify him.

Furthermore, the jury, sitting as factfinder, was entitled to weigh Mother's (and Appellant's) direct instructions seeking to stop the Victim from naming Appellant at all, in considering the Victim's sporadic reluctance to implicate Appellant. Appellant's first claim is waived, and would not merit relief.

Appellant's second, third, fourth and seventh claims all challenge the sufficiency of the evidence. Notably, Appellant fails in general to establish that any specific element of his crimes were not proven. Instead, he broadly denies guilt, and mostly attacks the credibility of the Commonwealth's witnesses, in actuality a challenge to the weight of the evidence. (***See, e.g,*** Appellant's Brief, at 28 ("The [Victim's] testimony is not credible . . . .")).

Our standard of review for a challenge to sufficiency is well-settled:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give

the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

***Commonwealth v. Slocum***, 86 A.3d 272, 275–76 (Pa. Super. 2014) (citations omitted). "Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty." ***Commonwealth v. Hecker***, 153 A.3d 1005, 1008 (Pa. Super. 2016), *appeal denied*, 169 A.3d 576 (Pa. 2017) (citation omitted).

In pertinent part, our Crimes Code defines the offense of EWOC as follows:

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

\* \* \*

(3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

18 Pa.C.S.A. § 4304(a) (1), (3).

The offense of harassment is defined in pertinent part as follows:

    **(a) Offense defined.—**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

        (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

        (2) follows the other person in or about a public place or places;

        (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;

        (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;

        (5) communicates repeatedly in an anonymous manner;

        (6) communicates repeatedly at extremely inconvenient hours; or

        (7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 Pa.C.S.A. § 2709(a).

In this appeal, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, with the benefit of all reasonable inferences, it is abundantly apparent that none of Appellant's sufficiency claims merit relief. Specifically, Appellant's first sufficiency challenge, (Question # 2), asserts that there was insufficient evidence to prove the "the alleged injury was, in fact, a cigarette burn." (Appellant's Brief, at 28; **see also id.** at 28-33). We disagree.

Appellant's argument acknowledges but misapprehends the fundamental nature of a sufficiency challenge and overlooks the requirement that we view the evidence in the light most favorable to the Commonwealth, as verdict winner, together with the benefit of all reasonable inferences to be drawn from the evidence. *See Slocum*, *supra* at 275-76; (*see also* Appellant's Brief, at 28).

Viewed in that light, as we must under our standard of review, there can be no serious dispute that the Commonwealth established that the Victim's injury was a cigarette burn.

Moreover, it bears noting that on appeal counsel for Appellant embellishes the record to make the testimony sound more favorable to him than it really was. For example, in Appellant's brief, counsel asserts that Dr. Elizabeth Wiest, the emergency room physician, "further opined that the injury was **just as consistent** with the child falling at the playground and hitting her head on something circular." (Appellant's Brief, at 32) (emphasis added) (record citation omitted).

That was not Dr. Wiest's testimony. In fact, Dr. Wiest did not "opine," on cross-examination in any formal sense at all. Rather, she merely answered defense counsel's hypothetical questions.

On direct examination, Dr. Wiest testified that the Victim's injury was consistent with the Victim's independent report (Father had left the room), of

a cigarette burn by Appellant. (***See*** N.T. Trial, 4/06/17, at 100). In pertinent part, Dr. Wiest's actual testimony on cross-examination was as follows:

Q. Aren't there other possible explanations for that type of lesion other than a cigarette burn?

A. There could have been, yes.

Q. And there was no pus coming out of it at the time, was there?

A. On my examination, no, there was no pus.

Q. So **if** the report had been that **perhaps** the child had fallen at the school **or** playground **or** hit her head, that ***might be consistent*** with what you saw on that picture as well[,] is that right?

A. **If** she had struck **something circular**, that could have been the case if it had opened up, yes.

(***Id.*** at 101) (emphases added).

Under our standard of review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth established that the Victim's injury was a cigarette burn, even leaving aside the odds of falling on "something circular."

Similarly, in general disregard of our standard of review, Appellant argues "[t]he expert opinion [of certified child abuse expert Lori D. Frasier, M.D.], therefore, **only** confirmed the injury '**could have been a cigarette**

**burn**,' not that it definitively was a cigarette burn beyond a reasonable doubt."

(Appellant's Brief, at 33) (emphases added).[5]

This internal "quote" is demonstrably inaccurate. In plain fact, it is false. It never appears in Dr. Frasier's opinion letter.[6] What Dr. Frasier did write was: "The lesion, in my opinion, has much more of an appearance of a burn than a scratch or an insect bite that has been scratched. The child's history of the incident is the most important factor." (Opinion Letter of Lori D. Frasier, M.D. to Pennsylvania State Police Trooper Scott Masci, June 8, 2013; **see also** N.T. Trial, 4/06/17, at 125). Later in the letter, Dr. Frasier adds: "It is **far more likely** that this injury was caused by cigarette (sic), based upon all the information I have been provided, than by an accidental mechanism." (**Id.**; **see also** N.T. Trial, 4/06/17, at 126) (emphasis added). Appellant's first insufficiency claim does not merit relief.

In Appellant's second challenge to sufficiency, (Question #3), Appellant posits that there was insufficient evidence to prove that he is a "person supervising the welfare of a child" within the meaning of the EWOC statute. (Appellant's Brief, at 34; **see also id.** at 34-36). This claim also lacks merit.

> [T]o support a conviction under the EWOC statute, the Commonwealth must establish each of the following elements: (1) the accused is aware of his/her duty to protect the child; (2) the

---

[5] Dr. Frasier's opinion letter was admitted by stipulation and read to the jury. (**See** N.T. Trial, 4/06/17, at 123-25).

[6] (**See** Opinion Letter of Lori D. Frasier, M.D. to Pennsylvania State Police Trooper Scott Masci, June 8, 2013).

accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Wallace*, 817 A.2d 485, 490–91 (Pa. Super. 2002), *appeal denied*, 833 A.2d 143 (Pa. 2003), *cert. denied*, 541 U.S. 907 (2004) (quotation marks and citation omitted).

The *Wallace* Court continued:

> With regard to the EWOC statute, we further recognize the Pennsylvania Supreme Court's statement in *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770, 772 (1976), that:

> > [T]he purpose of juvenile statutes, as the one at issue here, is basically protective in nature. Consequently these statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be circumscribed, these statutes are necessarily drawn broadly. It clearly would be impossible to enumerate every particular type of adult conduct against which society wants its children protected. We have therefore sanctioned statutes pertaining to juveniles which proscribe conduct producing or tending to produce a certain defined result . . . rather than itemizing every undesirable type of conduct.

> > \* \* \*

> > "The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it."

> *Id.* (emphasis omitted) (quoting *Commonwealth v. Marlin*, 452 Pa. 380, 305 A.2d 14, 18 (1973)). Thus, according to the dictates of *Mack*, statutes such as this are to "be given meaning by reference to the 'common sense of the community' and the broad protective purposes for which they are enacted." *Id.* at 772.

- 13 -

***Wallace***, *supra* at 491.

Here, noting that he is not a parent or guardian of the Victim, Appellant maintains that the mere fact that he is a "live-in boyfriend," who "occasionally assumed the status of a caretaker," of the daughter of his live-in girlfriend, is insufficient to find him guilty under EWOC. (Appellant's Brief, at 34). We disagree.

> In an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a non-custodial child from the scope of a statute protecting the physical and moral welfare of children. 18 Pa.C.S.A. § 4304 Official Comment, 1972. Accepting appellant's argument would be to accept the idea that this statute is limited to only those persons with permanent, temporary, or other quasi-legal custody of children. The common sense interpretation of the language of the statute and this Court's recent case law do not support such a narrow reading.

***Commonwealth v. Brown***, 721 A.2d 1105, 1107 (Pa. Super. 1998) (footnote omitted); *accord* ***Commonwealth v. Kellam***, 719 A.2d 792, 796 (Pa. Super. 1998), *appeal denied*, 740 A.2d 1145 (Pa. 1999) (holding criminal liability not limited to biological or adoptive parents).

As aptly noted by the Commonwealth, under controlling case law, "A person does not have to be the parent or guardian of a child to be criminally liable for endangering the welfare of a child." (Commonwealth's Brief, at 13 (citing ***Commonwealth v. Trippett***, 932 A.2d 188 (Pa. Super. 2007)). Additionally, a person is within the scope of liability when they reside with the

child and violate a duty of care.  ***See Brown***, ***supra*** at 1107–08; *accord*, ***Commonwealth v. Leatherby***, 116 A.3d 73, 81 (Pa. Super. 2015).

Appellant's third claim does not merit relief.

Appellant's over-lapping fourth claim also fails.   Appellant contends that there was insufficient evidence that he violated a duty of care, protection or support.  (***See*** Appellant's Brief, at 37-39).  We disagree.

In this claim, citing cases where the defendants were convicted of both aggravated assault and EWOC, Appellant argues that because the jury in this case acquitted him of simple assault, he cannot be convicted of EWOC by burning the child with a cigarette.  (***See id.*** at 38).  We disagree.

Preliminarily, we observe that apart from the cases affirming sentence (and conviction), Appellant offers no authority in support of his argument denying that he can be convicted.  (***See id.*** at 37-38).  Appellant argues, without the benefit of pertinent controlling authority, that the two verdicts are inconsistent.  Appellant's claim is waived.  ***See*** Pa.R.A.P. 2101, 2119(a), (b).

Moreover, it would not merit relief.  Appellant's contention overlooks the consistent affirmance of our Supreme Court of "**the long-standing and well-established principle that consistency in a verdict is not required**" and its refusal "**to speculate upon the nature of the jury's deliberations.**" ***Commonwealth v. Moore***, 103 A.3d 1240, 1247 (Pa. 2014) (quoting ***Commonwealth v. Miller***, 35 A.3d 1206, 1213 (Pa. 2012)) (emphases added).

- 15 -

> While recognizing that the jury's verdict appears to be inconsistent, we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision. Whether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for this Court to review. **We reaffirm that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal.** Furthermore, the "special weight" afforded the fact of an acquittal plays no role in the analysis of inconsistent verdicts, because, by definition, one of the verdicts will always be an acquittal.

*Miller*, *supra* at 1213 (citations omitted) (emphasis added).

Appellant's fourth claim overlooks controlling precedent. It is waived and would not merit relief.

Appellant's fifth claim asserts that the Victim's complaint was contradicted by incontrovertible facts. (*See* Appellant's Brief, at 6, 40-43). He argues that photographs of the Victim at play "after the time of the alleged incident[,]" admitted into evidence, require that this Court overturn his conviction. (*Id.* at 42). We disagree.

Appellant relies on *Lamp v. Pennsylvania R.R. Co.*, 158 A. 269 (Pa. 1931), which explained the incontrovertible physical facts rule as follows:

> It is now the established law of this state that, where the testimony of a witness is contradicted by incontrovertible physical facts, the testimony of such witness cannot be accepted, it being either mistaken or false, and a verdict based on it will not be sustained. Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible.

*Id.* at 271 (citations and quotation marks omitted).

Appellant's reliance on the rule here is misplaced. The incontrovertible physical facts rule can be applied only where the facts are positive, clear, indisputable and certain. *See Commonwealth v. Newman*, 470 A.2d 976, 979 (Pa. Super. 1984). "Moreover, the rule does not confer infallibility upon photographic evidence." *Id.*

> The incontrovertible physical facts rule, upon which the Court below based its conclusion, does not award to photographs the infallibility contemplated by the Court of Lehigh County. A photograph is merely pictorial testimony. While it is properly assumed that the lens of a camera will not lie, the reliability of the resulting product, insofar as evidence in a factual controversy is concerned, depends on many factors which have little or nothing to do with the fidelity of the mechanical process which transfers a physical object from tangible reality to an intangible image on paper. Many questions must be answered before a photograph may be accepted as incontrovertible. When was the picture taken? Had the photographed objects been moved since the happening which is the subject of dispute? Who took the picture? At what angle was the shot made? It is common knowledge that a given condition may be so photographed from different angles as to produce conflicting views of the situation under the camera's lens. The formidable Wigmore speaks of photographic testimony with vigor and conviction, as follows:

>> We are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes simply nothing, except so far as it has a human being's credit to support it. It is mere waste paper,- testimonial nonentity. It speaks to us no more than a stick or a stone. It can of itself tell us no more as to the existence of the thing portrayed upon it than can a tree or an ox. We must somehow put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court. It is somebody's testimony,-or it is nothing. It may, sometimes, to be sure, not be offered as a source of evidence, but only as a document whose existence and tenor are material in the substantive law applicable to the case,-as where, on a prosecution for stealing a map or in ejectment for land conveyed by deed

- 17 -

containing a map, the map is to be used irrespective of the correctness of the drawing; here we do not believe anything because the map represents it. But whenever such a document is offered as proving a thing to be as therein represented, then it is offered testimonially, and it must be associated with a testifier. (III Wigmore on Evidence, Sec. 790, page 174.)

***Heimbach v. Peltz***, 121 A.2d 114, 116–17 (Pa. 1956) (citations and internal quotation marks omitted).

Here, Appellant misapplies the incontrovertible physical facts rule. The photographs do not entitle him to a reversal of the jury's verdict, or that of the trial court. Appellant's fifth claim does not merit relief.

Appellant's sixth claim challenges the weight of the evidence.[7] (***See*** Appellant's Brief, at 6). Appellant chiefly argues that the Victim did not volunteer a statement implicating him to various people in the immediate aftermath of the incident, and otherwise made contradictory statements. (***See id.*** at 44-49).

Our scope and standard of review of a weight of the evidence claim is well-settled:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary

---

[7] Appellant properly preserved his challenge to the weight of the evidence in a motion for a new trial filed on April 19, 2017.

- 18 -

to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274–75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879–80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its Rule 1925(a) opinion, the trial court explained that it found the allegedly inconsistent statements attributed to the Victim "sorely lacking in reliability." (Trial Ct. Op., 7/14/17, at 9). To the contrary, the trial court found the testimony of the Victim to be the most credible and the most consistent. (*See* N.T. Sentencing, 6/13/17, at 16).

It is well settled that we must defer to credibility determinations made by the trial court, which had the opportunity to observe the demeanor and hear the testimony of the witnesses. *See Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976).

Here, the trial court concluded that the jury's verdict did not shock one's sense of justice. (*See* Trial Ct. Op., 7/14/17, at 9). We conclude that the trial court did not palpably abuse its discretion in ruling on the weight claim. *See Boyd*, *supra* at 1274–75. Accordingly, Appellant's weight claim fails.

Finally, in Appellant's seventh claim, he asserts that there was insufficient evidence for the trial court to convict him of harassment. (*See* Appellant's Brief, at 6). He maintains that there was no evidence of intent. (*See id.* at 50). Appellant purports to support this claim by a litany of self-serving conclusions to the effect that his conduct toward the Victim was always benign. (*See id.*). Appellant fails to reference the record for any of these claims. *See* Pa.R.A.P. 2119(c). Accordingly, Appellant's claim is waived.

Moreover, the claim would not merit relief. "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted). Appellant's claim of no evidence of intent is waived and would fail on the merits.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/18/2018